William P. TAVOULAREAS, et al., Plaintiffs,

v.

Philip PIRO, Defendant.

William P. TAVOULAREAS, et al., Plaintiffs,

v.

The WASHINGTON POST CO., et al., Defendants.

Civ. A. Nos. 80–2387, 80–3032.

United States District Court, District of Columbia.

Nov. 13, 1981.

John J. Walsh and Jerry Birenz, New York City and Joseph A. Artabane, Washington, D.C., for plaintiffs.

David E. Kendall and Robert C. Post, Washington, D.C., for defendant Washington Post.

Stanley M. Brand and Steven R. Ross, Gen. Counsel and Asst. Counsel, respectively, to the Clerk, U.S. House of Representatives, Washington, D.C., for witness.

## MEMORANDUM–ORDER

GASCH, District Judge.

The matter currently before the Court concerns certain objections interposed by counsel for the Clerk of the United States House of Representatives to questions counsel for plaintiffs seeks to propound to several congressional staff members being deposed in this action (the "congressional deponents"). In previous memoranda and orders, this Court has granted the congressional deponents' motion to intervene on a limited basis, denied their motion to quash the subpoena mandating attendance at the depositions in issue, and sought to provide guidance as to the scope of inquiry permissible at the depositions of the congressional staff members. Despite this Court's effort in its September 10, 1981 memorandum to establish guidelines for questioning congressional deponents, counsel for the interested parties have been unable to reach any kind of workable consensus as to the application of those guidelines to specific questions. Consequently, the Court is once again required to settle a discovery-related dispute. In so doing, the Court will not attempt to rule upon the propriety of each of the specific questions reflected in the transcript of the deposition of House counsel, David R. Schooler. Rather, the Court

will state more generally its conclusions as to the propriety of certain categories of questions, and will order the congressional deponents to answer on the basis of these conclusions.

## DISCUSSION

Counsel for the House object to any questions propounded by counsel for plaintiffs other than those falling within three narrowly defined categories of inquiry: (1) dissemination of information by the congressional deponent himself to sources outside Congress; (2) solicitations for dissemination of information outside of Congress by *Washington Post* reporters named in this litigation; and (3) communications by *Washington Post* reporters, or other noncongressional sources concerned with the subject matter of this litigation, regarding the reporter's or source's motivation or intent in providing relevant information to the congressional staff. The Court, however, is of the opinion that the congressional deponents' attempt to confine plaintiffs to these limited areas of inquiry is unjustified under the applicable caselaw. Although some of congressional deponents' objections have merit, the Court finds other of the assertions of privilege too broad to sustain. Those objections falling within this latter class must be overruled because they would improperly preclude congressional staff testimony concerning activities or communications that fall outside the relatively broad contours of the speech or debate clause, United States Const., Art. I, § 6, cl. 1; *cf. Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 501, 95 S.Ct. 1813, 1820, 44 L.Ed.2d 324 (1975) (noting that the Court has read the clause "broadly to effectuate its purposes"). As most of the relevant issues have been discussed in this Court's September 10th memorandum, the Court is not inclined to engage in an extended discussion of the pertinent caselaw. Rather, to expedite resolution of this matter so that the depositions may be resumed as expeditiously as possible, the Court will discuss and rule upon, in sequence, the categories of questions that are in contention among the interested parties.

(1) *Communications between Washington Post reporters and congressional staff.*

 Congressional deponents object to answering any questions regarding the providing of information by *Washington Post* reporters, or anyone else for that matter, to congressional staff members. In effect, these objections seek to insulate from inquiry any contact between *Washington Post* reporters and congressional staff other than contacts to disseminate, or to solicit dissemination of, information from the House staff. The Court, however, cannot sustain these objections to the extent that they would preclude testimony by congressional deponents concerning voluntary, unsolicited contacts by *Washington Post* reporters, particularly Patrick Tyler, to impart information to congressional staff. Insofar as *Washington Post* reporters, or others,[1] were voluntary, unsolicited sources of information regarding the matters in dispute in this libel action, the Court concludes that the congressional deponents are not privileged by the speech or debate clause to refuse to answer questions concerning the nature and content of these voluntary communications or the purpose or intent behind them.

 None of the precedent cited by congressional deponents directly confronts the particular issue before this Court: whether unsolicited contacts by noncongressional sources with congressional staff for the purpose of providing information to the staff, and absent any congressional assurance of confidentiality, are privileged from disclosure by the speech or debate clause. Nei-

---

1. With regard to the applicability of the speech or debate clause to a particular communication, the Court finds no basis for treating newspaper reporters any differently from any other citizen who voluntarily approaches and discloses information to congressional staff. If the privilege applies to a communication, its protections are absolute and bar any kind of compelled disclosure, regardless of the status of any particular third-party communicant. *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975).

ther *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), nor *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), discusses this precise issue. Nor does any decision by the United States Court of Appeals for the District of Columbia, including the *McSurely* decision, discuss this issue. See *McSurely v. McClellan*, 521 F.2d 1024 (D.C.Cir.1975), aff'd by an equally divided court, 553 F.2d 1277 (D.C.Cir.1976) (en banc), cert. dismissed, 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978). The Court agrees with congressional deponents that these decisions, as well as others,[2] hold (among other rulings) that the acquisition of information by Congress or congressional staff is generally an activity within the protection of the speech or debate clause. *See, e.g., Eastland v. United States Servicemen's Fund*, 421 U.S. at 504–505, 95 S.Ct. at 1821–1822; *McSurely v. McClellan*, 553 F.2d at 1286–87 (en banc). As stated by this Circuit in the second *McSurely* decision,

> The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and this should be within the ambit of the [speech or debate] privilege so that congressmen are able to discharge their constitutional duties properly.

553 F.2d at 1287 (quoting Reinstein & Silverglate, *Legislative Privilege and the Separation of Powers*, 86 Harv.L.Rev. 1113, 1154 (1973)). In light of numerous judicial pronouncements of this nature, this Court agrees with the contention that the active acquisition of information by congressional staff, whether formally or informally, is an activity within the protective ambit of the speech or debate clause.

■ The Court, however, disagrees with the congressional deponents' assertions in the present case that the mere passive receipt by congressional staff of information voluntarily proffered by various sources is "an integral part of the deliberative and communicative processes by which [congressmen] participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Eastland v. United States Servicemen's Fund*, 421 U.S. at 504, 95 S.Ct. at 1821 (quoting *Gravel v. United States*, 408 U.S. at 625, 92 S.Ct. at 2627). As recognized by this Circuit in the *en banc* decision in *McSurely*, even the relatively expansive protective shield created by the speech or debate clause has "finite limits." 553 F.2d at 1287. The considered judgment of the Court is that the finite limits of the speech or debate clause's shield, with regard to the information-gathering function of Congress, is the point at which congressional staff cease to be the active catalyst that induces the provision of particular information to Congress and become, instead, the passive recipient of information provided by an outside source at the source's own election. As used in prior decisions, the term "acquisition" connotes some active role by Congress in the process by which information is garnered from various sources. Absent some active intervention by a congressional staff member inducing the provision of information in some manner, therefore, the Court cannot conclude that the unilateral act of providing Congress with data, however useful to Congress, constitutes the "acquisition" of information by Congress or its staff.

■ In sum, the Court will order congressional deponents to answer any questions pertaining to the voluntary, unilateral submission (as opposed to acquisition) of information to congressional staff by reporters or by other sources. The Court will note for the benefit of the parties, however, that it does not intend a niggardly definition of the term "acquisition" as used in this opinion to denote protected information-gathering activities. Rather, if the

---

**2.** *See, e.g., United States v. Peoples Temple of the Disciples of Christ*, 515 F.Supp. 246, 248–49

(D.D.C.1981).

particular source provided information to House staff in response to a congressional telephone call or letter, an interview pre-arranged by a congressional staff member, a congressional promise of confidentiality, or, of course, a House subpoena, the material falls within the definition of information "acquired" pursuant to Congress' investigatory power. On the one hand, therefore, questions concerning information acquired by these, or similar, means are impermissible and need not be answered by congressional deponents. On the other hand, questions that seek to elicit information about contacts or communications initiated by noncongressional sources, including questions about any discussions that ensued between the source and a congressional staff member, are proper and shall be answered by these deponents.[3]

The Court recognizes that, in practice, the line between contacts initiated by Congress and contacts initiated by a source may be difficult to draw. But the necessity for line-drawing, however difficult, is unavoidable in some cases, including the present one. Consequently, the parties are directed to adhere to the guidelines of this opinion and, if any future disputes arise over the meaning of this opinion, to use their best efforts to resolve the dispute without further intervention by the Court.

(2) *Dissemination of information by congressional staff.*

■■■ Although the Court in its September 10th memorandum ruled questions regarding the dissemination of information by Congress, including attempts to induce the dissemination of information by Congress, outside the ambit of the speech or debate privilege, congressional deponents have objected to any questions that pertain

to the dissemination of information by any congressional staff member other than the particular member being deposed. The Court finds congressional deponents' interpretation of the import of the September 10th memorandum far too limited. As noted in that memorandum, "the act of disseminating information outside of Congress is beyond the legitimate legislative sphere and therefore outside of the protections afforded by the speech or debate clause." Memorandum Opinion at 10, *Tavoulareas v. Piro*, Civil Action Nos. 80–2387, 80–3032 (D.D.C. Sept. 10, 1981) (citing *Doe v. McMillan*, 412 U.S. 306, 317, 93 S.Ct. 2018, 2027, 36 L.Ed.2d 912 (1973); *Gravel v. United States*, 408 U.S. at 625, 92 S.Ct. at 2627, and *McSurely v. McClellan*, 521 F.2d at 1039). If the act of disseminating information outside of Congress is unprotected, the Court perceives no basis for limiting the questioning of congressional deponents to their own acts of dissemination. Rather, congressional deponents shall answer questions pertaining to the dissemination of information outside of Congress, including the dissemination of information, or arrangements to disseminate information, to any *Washington Post* reporter or to any executive agency.[4] The Supreme Court indicated approval of this line of questioning in the *Gravel* decision when it held that a Senate aide could be required to answer "questions relating to his or the Senator's arrangements, if any, with respect to [the] republication" of documents outside of Congress. *Gravel v. United States*, 408 U.S. at 628, 92 S.Ct. at 2628 (referring to republication of *The Pentagon Papers*). Accordingly, congressional deponents shall respond to questions dealing with dissemination outside Congress, but need not answer questions dealing with the interchange of documents or information

---

3. For example, the question beginning on page 20, line 10 of the transcript of the November 9th Schooler deposition is permissible under the guidelines of this opinion. In comparison, the question beginning on page 19, line 10, is permissible only to the extent Mr. Tyler initiated any of the contacts.

4. The Court reads the caselaw regarding the unprotected status of disseminations of information outside Congress to include disseminations to federal agencies. *See Gravel v. United States*, 408 U.S. at 625, 92 S.Ct. at 2627 (citing *United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966)).

among various congressional committees or staffs.[5]

(3) *Identification of documents disseminated outside of Congress.*

■ The Court will order the congressional deponents to identify any documents disseminated outside of Congress because the mere identification of these documents does not implicate any legislative function. The Court will sustain, however, the objections of counsel for the Clerk of the House to any questions that seek to elicit information regarding the preparation of any congressional document, including any questions about the bases for conclusions reached in the documents, the evidence relied upon or otherwise used to prepare the documents, or the sources who provided evidence relied upon or otherwise used in the documents. Such questions attempt to probe the very core of the congressional decisionmaking process. The fact that the documents were ultimately disseminated outside of Congress does not provide any justification for this sort of unwarranted incursion into the legislature's prerogatives. Consequently, congressional deponents' objections to this category of questions will be sustained.[6]

(4) *The structure of various congressional committee staffs.*

■ The Court will sustain the congressional deponents' objections to questions regarding the structures of various House committees. *See, e.g.,* Transcript of Schooler Deposition (question on page 29, beginning on line 21; questions on page 30, beginning on lines 3, 6, and 10). These questions appear to the Court to probe activities

that can fairly be characterized as within "the regular course of the legislative process." *United States v. Brewster,* 408 U.S. 501, 525, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972). Accordingly, objections to such questions will be sustained.

(5) *Subject matter of committee or staff investigations.*

■ The congressional deponents need not answer questions relating to the subject matter of any investigation being conducted by any congressional committee or committee staff, other than as previously set forth in this memorandum. Questions of the kind appearing on page 19, beginning on line 19, for example, are objectionable because they impinge on the legislative process in a manner inconsistent with the dictates of the speech or debate privilege. *See Gravel v. United States,* 408 U.S. at 628–29, 92 S.Ct. at 2628–29 (noting that the privilege forbids questioning a congressional staff member concerning the conduct of a congressman or his aides at any committee meeting).

CONCLUSION

This memorandum sets forth the guidelines by which future depositions of congressional deponents shall be governed. The parties are expected to resolve any future disagreements in light of the views expressed in this memorandum and are urged to do so without further judicial intervention. Although the Court recognizes that important issues have been raised by the parties to this dispute, it also must note that both the resources and the patience of the Court are not without limit.

Accordingly, it is by the Court this 13th day of November, 1981,

---

**5.** For example, the questions on pages 31–34 of the transcript of the Schooler deposition appear unobjectionable to the Court. The question on page 35, beginning on line 16, however, is clearly within the protection of the speech or debate clause.

**6.** The Court is referring to questions of the kind propounded on page 36, beginning on lines 5, 10, 17, and 21 of the transcript of the Schooler deposition. These questions seek to determine how staff members used information provided

to them in preparing various memoranda. These kinds of questions cannot be permitted without seriously encroaching upon the legislative prerogatives of Congress in performing its function as a co-equal branch of the federal government. *Cf. Eastland v. United States Servicemen's Fund,* 421 U.S. at 502, 95 S.Ct. at 1820 (noting that the speech or debate clause not only protects the integrity of the legislative process, but also reinforces the separation of powers) (citations omitted).

ORDERED that the depositions of congressional deponents be conducted in a manner consistent with the views expressed in this memorandum.