FREMONT ENERGY CORPORATION, et al., Plaintiffs-Appellees,

v.

The SEATTLE POST INTELLIGENCER, the Hearst Corporation, et al., Defendants,

John E. Moss, Chairman, Movant-Appellant.

No. 81–4567.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 18, 1982.

Decided Sept. 28, 1982.

Steven R. Ross, Washington, D.C., for movant-appellant.

James R. Prochnow, Constantine & Prochnow, P.C., Englewood, Colo., for plaintiffs-appellees.

Before MERRILL and HUG, Circuit Judges, and BROWN *, District Judge.

MERRILL, Circuit Judge:

John E. Moss appeals from an order of the district court for the Eastern District of California adjudging him in contempt of court for failure adequately to respond to the directions of a subpoena duces tecum.

Moss is a former member of Congress and the former chairman of the Subcommittee on Oversight and Investigation of the House Committee on Interstate and Foreign Commerce. In December 1978, that subcommittee issued a report on uranium lode mining claims on federal lands. The report apparently was critical of the activities of the Fremont Energy Corporation, and two articles in the Seattle Post Intelligencer reporting that criticism are the subject of a libel suit brought by Fremont against that newspaper in the Western District of Washington. Through its discovery efforts in that case Fremont learned that Dan Seligman, a reporter for the Post Intel-

---

* Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

ligencer, had telephoned Moss concerning the report on January 23, 1979, some three weeks after Moss's final term in Congress had expired. Fremont thereupon secured the issuance of a subpoena duces tecum by the Clerk of the District Court for the Eastern District of California, which subpoena was served upon Moss in Sacramento, California. It called on him to appear at the offices of the Sacramento Deposition Reporters of Sacramento, California to testify on behalf of plaintiffs. He was further instructed to bring with him "any and all reports, records, files, notes, memoranda, correspondence or other documents pertaining to certain remarks and comments more specifically described in attachment A" to the subpoena.

The attachment identified five items as follows:

1. Certain remarks made by Moss to Seligman on or about January 23, 1979.

2. An official report compiled and issued by the subcommittee chaired by Congressman Moss—identified by plaintiff as the "Moss Report," also known as a *Report on Uranium Lode Mining Claims on Federal Lands.*

3. The subcommittee hearings on which the Moss Report was based.

4. Certain comments made to Seligman by a member of the subcommittee staff concerning Fremont Energy Corporation, the Moss Report, or the subcommittee hearings.

5. The procedures and rules of the subcommittee and of Congress during the course of the subcommittee hearings.

On March 4, 1981 in the District Court for the Eastern District of California Moss moved to quash the subpoena claiming that its subject was privileged by the Speech or Debate Clause of the Constitution. On May 6, the court granted the motion insofar as the subpoena related to Moss's legislative activities (items 2, 3, and 5 of the attachment to the subpoena), and entered a protective order to that effect. As to the conversations with Seligman (items 1 and 4 of the attachment to the subpoena), however, the court denied the motion finding that they were not "part and parcel or essential to the deliberative process." This court dismissed Moss's appeal from the court's order for lack of finality.

Fremont conducted its deposition of Moss on August 26, 1981. Moss failed to bring to the deposition any documents meeting the specifications of items 1 and 4 of the subpoena and refused on Speech or Debate grounds to answer virtually all of Fremont's more probative questions. Fremont then applied for an order to show cause why Moss should not be held in contempt. The court issued the requested order and scheduled a show cause hearing for October 19, 1981. At that hearing the court held Moss in contempt and ordered that he be committed to the custody of the United States Marshall "until such time as he should see fit to comply with and obey the specifics and mandate of that subpoena duces tecum." The court also awarded to Fremont the costs and attorneys fees it had incurred in taking the fruitless deposition and in pursuing the contempt order. The court stayed incarceration pending the outcome of this appeal. We conclude that the district court erred in holding Moss in contempt.[1]

 We note first that because Moss was in violation of no court order, if he is in contempt, it is for failure to comply with the demands of the subpoena duces tecum. In this respect, Rule 45(f), Fed. R. Civ. P., provides:

*Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued.

---

1. Participating as amicus curiae, the Seattle Post Intelligencer argues that the information Fremont seeks from Moss is not relevant to Fremont's libel suit under Washington law, and accordingly that we need not reach the merits of the contempt order. In this forum ancillary to the underlying libel action, we decline to pass judgment on the relevancy question. See *Horizons Titanium Corp. v. Norton Co.,* 290 F.2d 421, 425 (1st Cir. 1961).

The subpoena served on Moss directed him to appear and testify at a deposition. This Moss did. The subpoena did not direct Moss to answer any of the specific questions propounded by Fremont. If he is to be held in contempt for failure to answer questions, then, it must be pursuant to Rule 37(b)(1), Fed. R. Civ. P., which provides:

> *Sanctions by Court in District Where Deposition is Taken.* If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the district in which the deposition is being taken, the failure may be considered a contempt of that court.

Since there was no such court direction[2], Moss cannot be adjudged in contempt for failure to answer questions.

■ The subpoena also directed Moss to produce all documents meeting the specifications stated by Freemont. Whether any such documents actually exist, however, the record does not show. Without such a showing, we cannot be certain that a violation of the subpoena has occurred, and therefore cannot affirm the imposition of sanctions.

■ On a related point, Moss argues that the district court denied him an opportunity to show "adequate excuse" for any non-compliance with the subpoena and that such opportunity is required by Rule 45(f). We agree. At the contempt hearing, Moss offered to provide an explanation (which he termed "defenses") for his failure to produce. The court rejected this offer stating that it was interested only in the discussion of sanctions.

REVERSED and REMANDED with instructions that the order holding appellant in contempt be vacated.

---

**2.** The court's May 6 order granting in part and denying in part Moss's motion to quash the subpoena did not constitute an order "direct[ing]" him to answer specific questions. Indeed, as the court acknowledged, the order left the scope of permissible questioning far from clear.