Murray W. MILLER, Plaintiff, Appellant, Cross-Appellee,

v.

TRANSAMERICAN PRESS, INC., et al., Defendants, Appellees, Cross-Appellants,

and

Sam Steiger, Deponent, Appellee, Cross-Appellee.

Nos. 82–5539, 82–5585.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1983.

Decided June 24, 1983.

Charles L. Babcock, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for Transamerican Press.

Glynn W. Gilcrease, Jr., Tempe, Ariz., for Murray W. Miller.

Before WRIGHT, CANBY, and BOOCHEVER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is an appeal from an order denying a motion to compel a deponent's testimony. The major issue is whether a nonparty former Congressman may invoke the speech or debate privilege as to questions about material he inserted into the Congressional Record.

## FACTS

An article appeared in the June 1972 issue of *Overdrive Magazine* implying that Miller, a union pension fund trustee, had misappropriated funds. In 1973, he filed a libel suit against Transamerican Press and others, the publishers of *Overdrive* ("Transamerican"), in Texas federal court.

Shortly after the article appeared, then-Congressman Steiger of Arizona inserted it in the Congressional Record. *See* 118 Cong. Rec. 27,401–03 (1972). Steiger was not named a defendant in Miller's lawsuit.

In Arizona in 1981, Miller served former Congressman Steiger with a subpoena duces tecum for a deposition. After counsel for the parties assembled for the deposition, Steiger announced that he would not attend.

Miller asked the Arizona federal court to hold Steiger in contempt for not answering the subpoena. Both parties sought reimbursement from Steiger for their expenses in the frustrated effort to take the deposition. Transamerican alternatively sought reimbursement from Miller, arguing that the subpoena served on Steiger was defective. After a hearing, the court denied the contempt motion but ordered Steiger to appear for deposition.

At the deposition, Steiger claimed the speech or debate privilege for most questions asked or proposed. Miller's counsel adjourned and moved to compel his answers. The court denied the motion, holding that Steiger had properly invoked the privilege.[1]

Miller appealed. Transamerican moved to amend the judgment to include a ruling on its request for expenses for the first scheduled deposition. The court ordered the judgment "amended to reflect that the court denied defendants' motion for sanctions." Transamerican had anticipated this with a cross-appeal.

---

1. This order was final and appealable. *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 228–29 (9th Cir.1975). However, the Arizona court clerk created no docket for this ancillary proceeding until Miller moved for entry of judgment over a month later. The time for appeal did not begin to run until the judgment was entered. *See* Fed.R.App.P. 4(a)(1).

## JURISDICTION

■ Transamerican has moved to dismiss the appeals.[2] A notice of appeal is jurisdictionally ineffective if filed before disposition of a Rule 59(e) motion to alter or amend the judgment. *Griggs v. Provident Consumer Discount Co.,* — U.S. —, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982). Neither party filed a new notice of appeal after disposition of the postjudgment motion.

■ Though Transamerican styled its motion a Rule 59(e) motion, "nomenclature is not controlling." *Sea Ranch Association v. California Coastal Zone Conservation Comm'ns,* 537 F.2d 1058, 1061 (9th Cir.1976). The court will construe it, however styled, to be the type proper for the relief requested. *See Whittaker v. Whittaker Corp.,* 639 F.2d 516, 520 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981).

The history of Rule 59(e) shows that "alter or amend" means a substantive change of mind by the court. *Boaz v. Mutual Life Insurance Co. of New York,* 146 F.2d 321 (8th Cir.1944), *cited in* Rule 59(e) advisory committee note; *see also White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 450–51, 102 S.Ct. 1162, 1165–66, 71 L.Ed.2d 325 (1982); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 674 F.2d 1252, 1260 (9th Cir.1982).

In contrast, a court's failure to memorialize part of its decision is a clerical error. *See Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224, 226 (10th Cir.1980); *Eaton v. Capps,* 348 F.Supp. 237, 240 (M.D. Ala.1972) *aff'd,* 480 F.2d 1021 (5th Cir.1973). Power to correct clerical errors of omission derives from Rule 60, *Barkeij v. Ford Motor Co.,* 230 F.2d 729, 730 (9th Cir.1956), not Rule 59(e). *See* Rule 60(a). Unlike a Rule 59(e) motion, a Rule 60 motion does not affect the validity of a previously filed notice of appeal. *See* Fed.R.App.P. 4(a)(4); Fed.R.Civ.P. 60.

Miller argues that Transamerican's postjudgment motion is properly characterized as a Rule 60 motion. He contends that the expense request was subsumed in the order denying contempt against Steiger, and the amendment to the judgment is an entry nunc pro tunc reflecting that the request was previously denied.

We have on occasion equated a request for an entry nunc pro tunc with a Rule 60(a) motion, *Barkeij v. Ford Motor Co.,* 230 F.2d at 730; *Matanuska Valley Lines, Inc. v. Neal,* 229 F.2d 136, 138 (9th Cir.1955), and construed a purported Rule 59(e) motion as a Rule 60(a) motion when the district court's response was to conform the written judgment to the partly tacit intention of its oral ruling. *Huey v. Teledyne, Inc.,* 608 F.2d 1234, 1237 (9th Cir.1979), *cert. denied,* — U.S. —, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982).

The language of the amendment supports Miller's construction of the motion as invoking relief under Rule 60(a), not Rule 59(e).

We conclude that Transamerican's "standing" here is immaterial. This court must examine jurisdictional problems *sua sponte.* Even if an appellee does not litigate the appeal, as Steiger has not, we must independently examine the propriety of the district court's decision and uphold it if warranted. The existence of a "case or controversy" in Miller's appeal is not dependent on Transamerican. It is not invoking the jurisdiction of the court as plaintiff or appellant (except in its cross-appeal for sanctions, for which it has standing). Moreover, it has Article III standing in the discovery controversy, because it has a stake in the outcome: as the libel defendant, it has a "pocketbook" interest in preventing discovery that may create or augment liability. *See infra.*

---

2. Miller complains that the publisher defendants "have convoluted their motions practice to wedge themselves into a position" to seek dismissal. He contends that they are not appropriately before the court on his appeal because they lack "standing" to defend an order protecting a nonparty deponent. Normally a privilege is assertible only by its holder. *E.g., United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1953). Steiger did, however, assert the privilege, in district court.

This issue does not seem to have been raised in the context of standing solely on the appeal from a discovery proceeding against a nonparty. Several courts have allowed a party in Transamerican's position to brief and argue such an appeal. *See Premium Service Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 227 (9th Cir.1975).

It did not destroy the pending notices of appeal or our jurisdiction.

## SPEECH OR DEBATE PRIVILEGE

The Constitution, art. I, § 6, cl. 1, provides: "[F]or any Speech or Debate in either House [Senators and Representatives] shall not be questioned in any other Place." Miller seeks to question Steiger on his recognition of the article he inserted in the Congressional Record, how it came to his attention, his legislative purpose in inserting it, his subsequent dissemination of it outside Congress, and aides he employed at the time who might know of Transamerican's instigation of the Congressional publication.

### Scope and Purpose of Privilege

The privilege is rooted in the separation-of-powers doctrine. Its " 'central role' ... is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.' " *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 502, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975).

The speech or debate privilege has been broadly construed. *Id.* 421 U.S. at 501, 511, 95 S.Ct. at 1820, 1825. Recent cases have, however, cut back on the potentially broad sweep of the clause, as to activities protected and protection of nonlegislator Congressional employees. *Hutchinson v. Proxmire,* 443 U.S. 111, 126–29, 99 S.Ct. 2675, 2683–85, 61 L.Ed.2d 411 (1979); *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Gravel v. United States,* 408 U.S. 606, 620, 625, 92 S.Ct. 2614, 2624, 2627, 33 L.Ed.2d 583 (1972); *United States v. Brewster,* 408 U.S. 501, 512–17, 92 S.Ct. 2531, 2537–40, 33 L.Ed.2d 507 (1972). Protection should not extend beyond what is necessary to accomplish the purposes of the clause. *Id.* 408 U.S. at 517, 92 S.Ct. at 2540.

Miller would have us restrict it further. He urges us to allow questions because traditional reasons for applying the privilege are absent.

In some Supreme Court cases, the legislator faced possible criminal liability. The "predomina[nt] thrust" of the clause is to forestall retaliatory criminal charges against critical legislators. *United States v. Johnson,* 383 U.S. 169, 180–82, 86 S.Ct. 749, 755–56, 15 L.Ed.2d 681 (1966). It applies to former Congressmen. *See United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

In civil cases, the Court applied the privilege to prevent distraction from legislative duties, obstruction of ongoing legislative activity, or the burden of defense from civil liability. *See Eastland,* 421 U.S. at 503, 511, 95 S.Ct. at 1821, 1825.

Steiger is merely a witness in this lawsuit. He cannot become a defendant because the statute of limitation has run. At his deposition, he emphasized that he was "not concerned about personal jeopardy," and the "accountability" rationale is inapplicable. Because he is no longer in office, the rationale of preventing distraction from legislative duties is not applicable either. Nor is the suit challenging or obstructing ongoing legislative activity.

However, the privilege also protects freedom of speech in the legislative forum.[3] *See Gravel,* 408 U.S. at 616, 92 S.Ct. at 2622; *Johnson,* 383 U.S. at 182 & n. 12, 86 S.Ct. at 756 & n. 12. When members are acting within the "legitimate legislative sphere," the privilege is an "absolute bar to interference." *Eastland,* 421 U.S. at 503, 95 S.Ct. at 1821. Any questioning about legislative acts, even in Steiger's situation, would "interfere" by having a chilling effect on Congressional freedom of speech.

The Supreme Court has referred to "the absoluteness of the phrase 'shall not be questioned,' and the sweep of the term 'in

**3.** Compare the original version of the clause approved by the Constitutional Convention: "Freedom of speech and debate in Congress shall not be impeached or questioned in any court, or place out of Congress ...." The present version was formulated by the Convention's Committee on Style. *See United States v. Johnson,* 383 U.S. 169, 177, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966).

any other Place.' " *Id.* The Court has said that Congressmen "may not be made to answer—*either in terms of questions* or in terms of defending himself from prosecution" regarding legislative acts. *Gravel,* 408 U.S. at 616, 92 S.Ct. at 2622. (emphasis supplied).

Lower courts have disregarded the absence of liability or of current legislative tasks when applying the privilege. *Tavoulareas v. Piro,* 93 F.R.D. 11, 18–19 (D.D.C. 1981) (Congressional staff as nonparty deponents in libel suit); *Dickey v. CBS, Inc.,* 387 F.Supp. 1332, 1336 (E.D.Pa.1975) (ex-Congressman nonparty to libel suit); *Smith v. Crown Publishers, Inc.,* 14 F.R.D. 514 (D.C.N.Y.1953) (Congresswoman plaintiff in libel action). None has compelled testimony about legislative acts.

We conclude that the clause means what it says. Steiger "shall not be questioned" on matters to which the privilege applies. His present status with regard to public office or to the lawsuit is irrelevant.

### Subject Matter Protected: Legislative Acts

On its face, the clause protects only speech and debate on the floor of Congress. But the Supreme Court has given the clause a practical meaning, extending the subject matter protected to cover activity that is within the "legitimate legislative sphere." *Eastland,* 421 U.S. at 503, 95 S.Ct. at 1821.

■ However, "[l]egislative acts are not all-encompassing"; the privilege extends beyond pure speech and debate only when necessary to prevent indirect impairment of Congressional deliberations. *Gravel,* 408 U.S. at 625, 92 S.Ct. at 2627. Activity other than speech or debate must meet what may be characterized as a two-part test to qualify for the privilege.

*First,* it must be "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Id.* The privilege applies "to things generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson,* 103 U.S. 168, 204, 26 L.Ed. 377 (1881).

*Second,* the activity must address proposed legislation or some other subject within Congress' constitutional jurisdiction. *Gravel,* 408 U.S. at 625, 92 S.Ct. at 2627. The scope of Congressional inquiry is broad, *see, e.g., id.* at 610 n. 6, 92 S.Ct. at 2619 n. 6, though not unlimited. *Watkins v. United States,* 354 U.S. 178, 187, 77 S.Ct. 1173, 1179, 1 L.Ed.2d 1273 (1957). The Supreme Court has so far disapproved only abusive, persecutory inquisitions into purely private affairs. *See id.*

Once the legislative-act test is met, the privilege is absolute. *Eastland,* 421 U.S. at 503, 95 S.Ct. at 1821. "It has enabled reckless men to slander and even destroy others with impunity, but that was the conscious choice of the Framers." *Brewster,* 408 U.S. at 516, 92 S.Ct. at 2539.

### Insertion in Congressional Record

■ Except for committee reports, which are privileged in their own right, the Court has not said whether the privilege applies to insertion of material directly into the Congressional Record.[4] In light of the close nexus between "Speech or Debate in either House" and the Record, direct insertion of the material therein may be privileged per se. *See Rusack v. Harsha,* 470 F.Supp. 285, 296 & n. 18 (M.D.Pa.1978); *McGovern v. Martz,* 182 F.Supp. 343, 347 (D.D.C.1960).

In any event, it meets part one of the legislative-act test because of the Record's role in the intra-Congressional communicative process. Part two of the test is also satisfied here. Steiger was on the House Select Subcommittee on Crime, and the article hinted at misappropriation of pension funds. Courts should not go beyond a narrow determination that the subject of a Congressional inquiry "may be fairly

---

4. In *Hutchinson v. Proxmire,* 443 U.S. at 116 n. 3, 99 S.Ct. at 2678 n. 3, the Court "assume[d], without deciding," that an undelivered speech printed in the Record carried the same immunity as one delivered on the floor.

deemed" within the committee's province. *Tenney v. Brandhove,* 341 U.S. 367, 378, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951).

Because Steiger's insertion of the article into the Record was privileged, questions about it are prohibited. This proscription includes questions about his motive or legislative purpose. *See Brewster,* 408 U.S. 501, 525, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972); *Johnson,* 383 U.S. at 184–85, 86 S.Ct. at 757–58.

### Information on Aides

■ The Supreme Court has refrained from deciding whether the privilege applies to a Congressman's employment decisions. *See Davis v. Passman,* 442 U.S. 228, 249, 99 S.Ct. 2264, 2279, 60 L.Ed.2d 846 (1979) (employment discrimination suit). But the mere identities of former employees cannot meet the legislative-act test. Steiger shall provide this information. He need not disclose intra-office communications.

If the aides are deposed, Steiger may have them assert his privilege. Because Congressmen must delegate responsibility, aides may invoke the privilege to the extent that the Congressman may and does claim it. *Gravel,* 408 U.S. at 616–19, 92 S.Ct. at 2622–24.

### Source for the Article

■ Not all conduct preceding a legislative act falls within the privilege. *United States v. Helstoski,* 442 U.S. 477, 489–90, 99 S.Ct. 2432, 2439–40, 61 L.Ed.2d 12 (1979); *Brewster,* 408 U.S. at 528, 92 S.Ct. at 2545. Congressional investigative functions are protected. *Eastland,* 421 U.S. at 504–05, 95 S.Ct. at 1821–22. But this does not necessarily shield the source of information. The Supreme Court has held that the privilege does not apply in a grand jury investigation into the source of illegally disclosed classified material. *See Gravel,* 408 U.S. at 628, 92 S.Ct. at 2628.

■ Only one other court has directly confronted our situation, where a civil litigant seeks information about a nonparty Congressman's source of information and the source's revelation of the information did not constitute a crime. The district court in *Tavoulareas v. Piro,* 527 F.Supp. 676 (D.D.C.1981) reasoned that "the mere passive receipt by congressional staff of information voluntarily proffered by various sources" is not a legislative act. *Id.* at 680. The court permitted questions about communications initiated by noncongressional sources. *Id.* at 681; *see also Tavoulareas v. Piro,* 93 F.R.D. at 19.

The question is a close one, but we must disagree with the *Tavoulareas* court. Its reading creates several problems.

First, there are practical difficulties in separating the acts of a noncongressional source from the responsive communication of the Congressman or his staff. Once this interaction has begun, the transaction can no longer be characterized as the "unilateral act," *Tavoulareas,* 527 F.Supp. at 680, of the source.

Moreover, the *Tavoulareas* reading inevitably results in an intrusion into the area protected by the privilege. It permits a Congressman to be catechized about the manner in which he obtained information. An assertion of the privilege would be tantamount to an answer that his role had been active rather than "passive." This constitutes "questioning" about a legislative act, even under the *Tavoulareas* court's definition of Congressional investigation.

Obtaining information pertinent to potential legislation or investigation is one of the "things generally done in a session of the House," *Kilbourn v. Thompson,* 103 U.S. at 204, concerning matters within the "legitimate legislative sphere," *Eastland,* 421 U.S. at 503, 95 S.Ct. at 1821. Constituents may provide data to document their views when urging the Congressman to initiate or support some legislative action. Informants may, in confidence, give information that is useful in exposing corruption within the government or elsewhere.

If a source's identity is disclosed, he could suffer serious adverse consequences. In the case of organized crime, for example, disclosure could even be life-threatening.

The possibility of public exposure could constrain these sources. It could deter constituents from candid communication with

their legislative representatives and otherwise cause the loss of valuable information.

Even more to the point, it would chill speech and debate on the floor. The Congressman might censor his remarks or forgo them entirely to protect the privacy of his sources, if he contemplated that he could be forced to reveal their identity in a lawsuit.

We conclude that the privilege extends to questions about a Congressman's sources of information.

### Republication Outside Congress

 Activities such as public speaking are political rather than legislative. *Brewster,* 408 U.S. at 512–14, 92 S.Ct. at 2537–38. Republication of intra-Congressional material outside Congress, is not a protected legislative activity. *See, e.g., Hutchinson v. Proxmire,* 443 U.S. 111, 127–28, 99 S.Ct. 2675, 2684, 61 L.Ed.2d 411 (1979). The "informing function" of Congress is that of informing itself about subjects susceptible to legislation, not that of informing the public. *Id.* at 132–33. Miller's questions about Steiger's speeches outside the Congressional forum should have been allowed.

### RELEVANCY

 Transamerican argues that even if the privilege does not apply, the questions are outside the permissible scope of discovery because they are irrelevant.

Miller asserts that the unprivileged evidence he seeks is pertinent on the issue of damages. He argues it will show how broadly Steiger disseminated the alleged libels in the article, and that Transamerican

will be liable if it proximately caused this dissemination. Transamerican disputes that it will be liable under the law of any of the potentially applicable jurisdictions.

This issue was apparently not raised below. We decline to address it.[5]

### DENIAL OF SANCTIONS

 Transamerican seeks reimbursement from Miller or Steiger for its expenses in attending the scheduled deposition at which Steiger failed to appear. Miller served Steiger with a subpoena at his residence in one county for a deposition in another county. Transamerican argued that the subpoena was defective under Rule 45(d)(2) because that Rule requires the deponent to appear only in a county where he resides or does business.

The only discovery sanction available against Steiger is Federal Rule of Civil Procedure 37(b)(1), which provides that a deponent who fails to be sworn or answer after being directed to by the court may be held in contempt. As the subpoena served on Steiger was defective, no sanctions were warranted.

As for Miller, Rule 37(b) does not authorize sanctions against a party in an ancillary forum. Even in the main forum it provides sanctions only for failure to obey a court order.

Rule 30(g)(2) provides that a party may be ordered to reimburse those attending a deposition if the witness does not appear because of the party's failure to serve a subpoena. Miller served a subpoena. Its defect resulted from the mistaken impres-

5. The Speech or Debate privilege has traditionally received expedited treatment by the judiciary so that where it is applicable, legislators may be freed quickly from the burden of defending themselves. *See Hutchinson v. Proxmire,* 443 U.S. at 122–23, 99 S.Ct. at 2681–82. No such consideration applies to the relevancy issue.

The main forum of this litigation has not yet resolved the choice-of-law problem. *See Miller v. Transamerican Press, Inc.,* 621 F.2d at 724–25. Foreclosing discovery on relevancy grounds would require treatment of the libel law of at least three jurisdictions.

Alternatively, we could resolve the choice of law for the main case. The parties tell us that

the main forum is on the verge of doing so. As an ancillary jurisdiction, we have only a tangential interest in this matter. *See Fremont Energy Corp. v. Seattle Post Intelligencer,* 688 F.2d 1285, 1286 n. 1 (9th Cir.1982).

The Texas federal court is better qualified for this task, which requires the application of Texas choice-of-law rules. It is also more familiar with the facts of the case. Choice of law in a libel action is complex and fact-dependent. *See Fleury v. Harper & Row, Publishers, Inc.,* 698 F.2d 1022, 1026 (9th Cir.1983). It may have resolved the problem before Steiger is redeposed.

sion that Steiger still had a place of business in Tempe. His former place of business there still took messages for him, so the mistake was understandable. Until the morning of the deposition, his activities conveyed the impression that he would attend. Moreover, his nonappearance resulted not from a belief that the subpoena was defective, but from his erroneous impression that the deposition had been abandoned after he mentioned his speech or debate privilege to Miller's counsel.

Whether to impose discovery sanctions is a matter of the district court's discretion. *See Forro Precision, Inc. v. IBM Corp.*, 673 F.2d 1045, 1053 (9th Cir.1982). In view of the circumstances and the law, denial of sanctions was an exercise of sound discretion.

### CONCLUSION

The motion to dismiss the appeals for want of jurisdiction is denied. The order and judgment denying the motion to compel are affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion. The denial of sanctions for the first scheduled deposition is affirmed.