810 F.2d 1500
 Blue Sky L. Rep. P 72,490, Fed. Sec. L. Rep. P 93,149,
7 Fed.R.Serv.3d 102
 David F. DURHAM, Plaintiff-Appellant,
v.
Walter A. KELLY, Defendant,
and
Phillip A. Rennert, and Jay L. Anderson, Defendants-Appellees.
SCHUTZKY DISTRIBUTORS, INC., Plaintiff-Appellant,
v.
Walter A. KELLY, Defendant,
and
Phillip A. Rennert; K. Duane McCleery; Judith Meyers
Kelly; Jay L. Anderson; Settler's Energy Corporation;
Settlers' Energy Resources, Inc.; Michael R. Marshall;
Charles Lyndall Stewart; Payne County Operating Company,
Defendants-Appellees.
 Nos. 86-1669, 86-1670.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 15, 1987.
Decided Feb. 24, 1987.
 
 William J. Hooy, Concord, Cal., for plaintiff-appellant Schutzky Distributors, Inc.
 Jeffrey R. Williams, San Francisco, Cal., for plaintiff-appellant David F. Durham.
 Loutitia Denison Eason, Oklahoma City, Okl., for defendants-appellees Settlers Energy Corporation, Michael R. Marshall, C. Lyndell Stewart and Payne County Operating Company.
 Andrew J. Ogilvie, Weston, Mass., for defendant-appellee Judith Kelly.
 Appeal from the United States District Court for the Northern District of California.
 Before HUG, SCHROEDER and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Schutzky Distributors, Inc. (hereinafter Schutzky) and David F. Durham (hereinafter Durham) appeal the district court's grant of summary judgment in favor of defendant Judith Kelly (hereinafter Kelly). Schutzky also appeals from the dismissal of pendent state claims against Settlers Energy Corporation, Payne County Operating Company, Michael R. Marshall, and Charles Lyndall Stewart (hereinafter referred to collectively as the Settlers).
 
 FACTS AND PROCEDURAL POSTURE
 
 2
 This dispute arises from the sale in 1981 of oil and gas partnership interests by Earth Energy Resources, Inc. (hereinafter EER), an Oklahoma corporation, to Durham and to BCOM, the assignor and wholly owned subsidiary of Schutzky.
 
 
 3
 In 1982, the Settlers bought all of EER's outstanding stock and assumed operation and control of the drilling project.
 
 
 4
 On March 14, 1984, Schutzky filed claims for securities fraud violations against various defendants including the Settlers, Kelly, and Kelly's husband, Walter A. Kelly, who was president of EER. On May 14, 1984, Schutzky filed a first amended complaint. On June 28, 1984, Durham brought an action for securities fraud violations against various defendants including Kelly and her husband, Walter A. Kelly. These actions were consolidated in the district court for all purposes. Schutzky and Durham alleged that the named defendants defrauded them by making material misrepresentations and failing to disclose material facts in the course of selling the partnership interests in certain private drilling projects. These claims were brought under various federal and state laws. The claims against Kelly included liability as an aider and abetter under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1982) (hereinafter Exchange Act) and liability as a "controlling person" under section 20(a) of the Exchange Act, 15 U.S.C. Sec. 78t(a) (1982), under section 15 of the Securities Act of 1933, 15 U.S.C. Sec. 77 o (1982) (hereinafter the Securities Act), and under section 25504 of the California Corporations Code (West 1977). The complaint against the Settlers included pendent state claims.
 
 
 5
 Kelly moved for summary judgment against Durham's complaint and Schutzky's first amended complaint. The district court granted Kelly's motion for summary judgment. All proceedings against Walter A. Kelly were stayed when he filed for voluntary bankruptcy.
 
 
 6
 The Settlers moved to dismiss Schutzky's first amended complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dismissal was ordered on October 18, 1985. The claims asserted under the federal securities law were dismissed with prejudice. The pendent state claims were dismissed without prejudice. After a three-week trial the jury rendered special verdicts awarding money damages to Schutzky and Durham against two other defendants not involved in this appeal.
 
 
 7
 On January 8, 1986, the district court entered final judgments in each of the matters filed by Schutzky and Durham. The judgments provided that each party would bear its own costs. On January 21, 1986, Durham timely moved to amend his judgment entered on January 8, 1986, to provide that he recover costs pursuant to Fed.R.Civ.P. 54(d) and 59(e). On February 4, 1986, Durham and Schutzky filed notices of appeal. On May 14, 1986, the district court granted Durham's motion and amended the judgment to award costs to Durham. Schutzky and Durham filed no new notices of appeal after entry of the amended judgment.
 
 DISCUSSION
 1. Timeliness Of The Notice Of Appeal
 
 8
 The Settlers and Kelly ask us to dismiss these appeals as untimely filed. They argue that under Fed.R.App.P. 4(a)(4) the notices of appeal filed by Schutzky and Durham were ineffective because they were filed after Durham filed a motion "for an order amending the Court's judgment entered January 8, 1986, to award plaintiff David Durham his taxable costs of suit incurred herein." Durham's motion provided that it was "based upon Rule 54(d) and 59(e), Federal Rules of Civil Procedure...." Rule 4(a)(4) provides that "[a] notice of appeal filed before the disposition of any ... motion [under Rule 59 to alter or amend the judgment] shall have no effect." Appellees contend that since no further notice of appeal was filed in this matter, this court has no jurisdiction to consider these appeals.
 
 
 9
 Before we can reach the merits of the appellants' contentions, we must decide whether a motion to amend a judgment to award costs comes within Rule 4(a)(4)'s prohibition against premature appeals filed during the pendency of a Rule 59(e) motion to alter or amend a judgment. We have not been called upon previously to address this issue. The Eleventh Circuit has ruled upon this question in Lucas v. Florida Power & Light Co., 729 F.2d 1300 (11th Cir.1984). In Lucas, after judgment was entered on October 31, 1983, appellants filed on November 10, 1983, a motion pursuant to Rule 59(e), "to alter or amend the final judgment with respect to the allocation of costs." Id. at 1300. Ten days later, on November 20, 1983, appellants filed a notice of appeal. No further notice of appeal was filed by the appellants in Lucas. Id. The appellees in Lucas moved to dismiss the appeal on the ground that the notice of appeal was untimely because it was not filed after the district court's determination of the motion to alter or amend the judgment. Id. at 1301.
 
 
 10
 The Eleventh Circuit held in Lucas that "[a] motion respecting costs is not a motion to alter or amend a judgment under Rule 59." Id. The court reasoned that a motion to alter or amend a judgment under Rule 59 "applies to motions for reconsideration of matters encompassed in a decision on the merits of the dispute, and not matters collateral to the merits." Id. The Lucas court concluded that a motion for costs does not relate to a substantive issue "but relates exclusively to the collateral question of what is due because of the judgment." Id. The Eleventh Circuit relied on White v. New Hampshire, 455 U.S. 445, 450-56, 102 S.Ct. 1162, 1165-68, 71 L.Ed.2d 325 (1982) in support of this conclusion. Lucas, 729 F.2d at 1301. In White, the Supreme Court held that Rule 59(e) applies "only to support reconsideration of matters properly encompassed in a decision on the merits." 455 U.S. at 451. In Miller v. Transamerican Press, Inc., 709 F.2d 524 (9th Cir.1983), we stated that the words "alter or amend" in Rule 59(e) apply to "a substantive change of mind by the court." Id. at 527 (emphasis added) (citing White v. New Hampshire Dep't of Employment Security, 455 U.S. at 450-51, 102 S.Ct. at 1165-68). In Miller, we held that an amendment to correct clerical errors or omissions did not come within Rule 59(e). 709 F.2d at 527. We are persuaded by the analysis in Lucas. We adopt as the law of this circuit the rule that a motion to alter or amend a judgment to award costs does not come within Rule 59(e). Accordingly, the provisions of Rule 4(a)(4) which render ineffective a notice of appeal filed during the pendency of a motion to alter or amend a judgment are inapplicable with respect to a request for reconsideration concerning costs.
 
 
 11
 The fact that appellants labelled their motion as a Rule 59(e) motion is not dispositive. In Miller v. Transamerican Press, Inc., we stated: "[t]hough Transamerican styled its motion a Rule 59(e) motion, 'nomenclature is not controlling.' Sea Ranch Association v. California Coastal Zone Conservation Comm'ns, 537 F.2d 1058, 1061 (9th Cir.1976). The court will construe it, however styled, to be the type proper for the relief requested." 709 F.2d at 527.
 
 
 12
 Thus, we are free to construe Durham's motion as a request for an allocation for costs and ignore the label he erroneously attached to it. Because Durham's request for a reconsideration of the order regarding costs was collateral to the judgment awarding damages on his claim, appellants were not required to file new notices of appeal. We have jurisdiction over these appeals.
 
 2. Summary Judgment
 
 13
 Schutzky and Durham contend that the district court erred in granting Kelly's motion for summary judgment because genuine issues of material fact exist concerning Kelly's liability as an aider and abetter under section 10(b) of the Exchange Act, 15 U.S.C. Sec. 78j(b), and as a "controlling person" under section 20(a) of the Exchange Act, 15 U.S.C. Sec. 78t(a), under section 15 of the Securities Act, 15 U.S.C. Sec. 77o, and under section 25504 of the California Corporations Code.
 
 
 14
 An order granting summary judgment is reviewed de novo. Lopez v. Dean Witter Reynolds, Inc., 805 F.2d 880, 883 (9th Cir.1986). We must determine whether the district court properly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. We are required to view the evidence and the inferences arising therefrom in the light most favorable to the non-moving party. Id.
 
 
 15
 Section 20(a) of the Exchange Act provides that:
 
 
 16
 Every person who, directly or indirectly, controls any person liable under any provision of [chapter 2B] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person ...
 
 
 17
 15 U.S.C. Sec. 78t.
 
 
 18
 Section 15 of the Securities Act provides that:
 
 
 19
 Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 771 of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.
 
 
 20
 15 U.S.C. Sec. 77o.
 
 
 21
 "Controlling person" under both of the above federal acts is given the same interpretation because "section 20(a) [of the Exchange Act] is an analogue of section 15 of the Securities Act." Pharo v. Smith, 621 F.2d 656, 672-73 (5th Cir.), rev'd and remanded in part on other grounds, 625 F.2d 1226 (1980).
 
 
 22
 To establish that someone is a "controlling person" the complainant must show that there was a relationship between the controlling and controlled person and that actual power or influence was exerted over the alleged controlled person. Kersh v. General Council, 804 F.2d 546, 548 (9th Cir.1986).
 
 
 23
 In Christoffel v. E.F. Hutton & Co., 588 F.2d 665 (9th Cir.1978), we noted that Congress, in using the term "controlling person" intended to encompass all persons who exerted actual control over someone who violated the securities laws. Id. at 668.
 
 
 24
 In Kersh v. General Council, we held as follows:
 
 
 25
 To establish a prima facie case that the defendant was a "controlling person", a plaintiff must show not only that the defendant had actual power or influence, but also that he was a "culpable participant" in the alleged illegal activity. Christoffel v. E.F. Hutton & Co., Inc., 588 F.2d at 668.
 
 
 26
 Kersh, 804 F.2d at 549.
 
 
 27
 Schutzky and Durham argue that the evidence in the record demonstrates that there is a triable issue of fact regarding whether Kelly was a "controlling person." They refer us to the following facts in their claim that Kelly was a "controlling person":
 
 
 28
 1. Kelly was a corporate secretary and director of EER at the time Schutzky and Durham made their purchases and actively performed the duties imposed by those titles.
 
 
 29
 2. Kelly allowed her name, background, and qualifications to be used in the prospectus and the sale of these programs.
 
 
 30
 3. Kelly was also a director of U.S. Petroleum, Inc.
 
 
 31
 4. Rennert represented at his sales presentation to Schutzky that Kelly was involved in the development and marketing of the programs and was "also related to some important oil people in the area who could help make the programs successful."
 
 
 32
 5. Kelly attended the EER's directors' meeting at which EER's head geologist cautioned "the Directors that the company was growing too quickly to do a proper exploration job."
 
 
 33
 6. Kelly knew that "EER was going to act as general partner on limited partnerships for oil and gas drilling prospects which would be offered to investors in the public."
 
 
 34
 7. Kelly "was aware that there were prospectuses and believes she read the one for the 1981 C Program" and found no incorrect, ambiguous or untrue statement.
 
 
 35
 8. Kelly was secretary/treasurer at the time of EER's formation.
 
 
 36
 9. Kelly attended, participated in, and voted at several board meetings and took notes at one meeting.
 
 
 37
 10. Kelly received a salary from EER for secretarial work.
 
 
 38
 11. Kelly signed the Application for Certificate of Authority for EER, the Articles of Incorporation, the Waiver of Notice of the First Directors Meeting, and the Resolution of the Board for Authorization to Open Deposit Account.
 
 
 39
 12. Kelly was married to Walter Kelly who was a person potentially liable for violations of the Exchange Act and the Securities Act.
 
 
 40
 13. Walter Kelly represented in the sales presentation that his wife "was involved."
 
 
 41
 14. Kelly accompanied her husband to Hawaii where he made a presentation at an oil jobbers meeting in which he made representations similar to those in 4 and 13 above.
 
 
 42
 15. Kelly was "aware of the business dealings of Kelly, her husband, and she would make suggestions concerning how programs should be run, what wells ought to be drilled, and what properties might be available."
 
 
 43
 16. Kelly had an expectancy interest in Walter Kelly's estate which would include 66 2/3 of the voting shares of EER.
 
 
 44
 17. Kelly obtained a name of competent counsel to handle securities problems and suggested it to her husband.
 
 
 45
 Schutzky and Durham argue that the factors enumerated above raise triable issues of fact regarding whether Kelly was a "controlling person." At most, this evidence shows that Kelly had actual power or influence over general corporate affairs. None of these facts, however, support an inference that Kelly was a " 'culpable participant' in the alleged illegal activity." Kersh, 804 F.2d at 549. No evidence was offered that would support a reasonable inference that Kelly directly or indirectly induced her husband to make untrue statements of material facts, or to fail to state material facts in connection with the offer and sale of securities, or that she was aware that such conduct occurred. The district court did not err in granting summary judgment concerning the alleged violations of section 20(a) of the Exchange Act, 15 U.S.C. Sec. 78t(a) and section 15 of the Securities Act, 15 U.S.C. Sec. 77o.
 
 
 46
 Durham and Schutzky have also failed to show that there are triable issues of fact regarding the California securities laws. The complaints alleged that Kelly violated section 25504 of the California Corporations Code.
 
 Section 25504 provides in relevant part:
 
 47
 Every person who directly or indirectly controls a person liable under Section 25501 or 25503, ... [is] also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability is alleged to exist.
 
 
 48
 Cal.Corp.Code Sec. 25504.
 
 
 49
 In Underhill v. Royal, 769 F.2d 1426 (9th Cir.1985), we concluded that "[t]he control person statute under California law is substantially the same as [15 U.S.C. Sec. 77o]." Id. at 1433. We also upheld a jury instruction that provided that proof of "knowledge of or reasonable grounds to believe in the existence of the facts," constituting a violation of the California securities laws contained the substance of the law set forth in section 25504. Id.
 
 
 50
 The facts relied upon by Schutzky and Durham do not demonstrate that Kelly had knowledge that Walter Kelly was guilty of misrepresentation or concealed material facts in violation of California's securities laws.
 
 
 51
 Schutzky and Durham also argue that summary judgment should not have been granted regarding their claim that Kelly was liable as an aider and abetter under section 10(b) of the Exchange Act, 15 U.S.C. Sec. 78j(b).
 
 
 52
 To prove a cause of action under section 10(b), a plaintiff must present evidence showing:
 
 
 53
 (1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong.
 
 
 54
 Harmsen v. Smith, 693 F.2d 932, 943 (9th Cir.1982), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).
 
 
 55
 There is no evidence in the record that Kelly provided substantial assistance or that she had actual knowledge of the alleged illegal activities of the chief executive officer of the corporation. It would be absurd to hold her responsible as an aider and abetter without proof of scienter merely because she was a director of a corporation and married to the person who may have been guilty of violations of the Exchange Act.
 
 3. Dismissal Of The Pendent State Claims
 
 56
 Schutzky's first amended complaint relied upon violations of the federal securities laws as the basis for federal jurisdiction. After the Settlers filed a motion to dismiss, Schutzky conceded that the complaint did not state sufficient facts to show liability for the violations of any federal law. Schutzky also conceded that the claims under the California securities laws were not valid. As a result of these concerns, the only remaining causes of action were pendent state claims not involving a violation of the securities laws. Schutzky asserts that the district court abused its discretion in dismissing the pendent state claims. This contention lacks merit. Where the district court has properly dismissed federal law claims "pendent state claims also should be dismissed." Jones v. Community Redevelopment Agency, 733 F.2d 646, 651 (9th Cir.1984) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 57
 4. Propriety Of The Denial Of The Motion To Amend
 
 
 58
 Schutzky also contends that the district court abused its discretion in not granting it leave to file a second amended complaint. Schutzky failed to file a motion for leave to amend its first amended complaint. Instead, in its reply brief, filed on July 19, 1985, in response to the motion to dismiss the first amended complaint, Schutzky requested that the district court permit it to amend its complaint to allege facts demonstrating diversity jurisdiction. The motion was heard on August 16, 1985. The district court orally announced its intention to deny the request to amend the first amended complaint on the ground that it was untimely. The original complaint in this matter was filed on March 3, 1984. Trial was set on September 9, 1985. Thus, Schutzky's motion to amend was filed less than two months before the trial date and argued twenty days before trial. We review the denial of a motion to amend a complaint after a responsive pleading has been filed for abuse of discretion. Jones v. Community Development Agency, 733 F.2d 646, 650 (9th Cir.1984). The district court's determination that the motion was untimely is fully supported by the record. Some factors to consider in granting leave to amend are delay in making the motion and the possibility of unduly delaying the disposition of the case. See M/V American Queen v. San Diego Marine Const., 708 F.2d 1483, 1492 (9th Cir.1983) (the court did not abuse its discretion in denying a motion for leave to amend made 1 1/2 years after the filing of the complaint where no new facts were discovered in the interim). Schutzky filed a complaint and an amended complaint and waited 16 months before alerting opposing counsel that defendants were residents of Oklahoma. No facts were presented or argued to the court that explain the belated claim of diversity jurisdiction. Questions were raised during oral argument by the Settlers concerning the sufficiency of the allegations to establish the requisite jurisdictional amount in controversy. Resolution of this issue, after the time for discovery has been completed, imposed an unfair burden on the Settlers and may have caused a delay in the commencement of trial. Under the circumstances presented to the trial court, we cannot say that the denial of the motion to amend the first amended complaint was an abuse of discretion.
 
 
 59
 The judgment is AFFIRMED.