208

George H. BENFORD

v.

AMERICAN BROADCASTING COMPA-
NIES, INC., a New York Corporation,
Mrs. Isaac (Betty) Hamburger, Miss
Kathleen T. Gardner, Mrs. Lillian M.
Teitelbaum, David L. Holton and Mar-
garet Osmer.

Civ. No. N 79–2386.

United States District Court,
D. Maryland.

June 6, 1984.

Wilson K. Barnes, Baltimore, Md., Dean
E. Sharp, George B. Driesen, Washington,
D.C., for plaintiff.

Stanley M. Brand, Steven R. Ross, Gen.
Counsel to the Clerk, U.S. House of Repre-
sentatives, Washington, D.C., for defend-
ants Gardner, Teitelbaum, Holton & Ham-
burger.

Alan I. Baron, Washington, D.C., for de-
fendant American Broadcasting.

MEMORANDUM AND ORDER

FREDERIC N. SMALKIN, United States
Magistrate.

Pursuant to designation from Judge Nor-
throp to, *inter alia,* hear and determine
non-dispositive pretrial matters (*see* 28
U.S.C. § 636(b)(1)(A)), this case came on for
hearing before me on the plaintiff's motion
to compel defendants Teitelbaum and Ham-
burger to answer deposition questions.
The issue for decision, as framed in the
plaintiff's response to the opposition of de-
fendants Hamburger and Teitelbaum to
plaintiff's motions to compel (Paper # 200),
is whether the mentioned defendants are
entitled to assert the Constitutional privi-
lege provided by the Speech and Debate
Clause, U.S. CONST. art. 1, § 6, cl. 1.

The history of this case can be gleaned
from the several reported decisions of this
District Court and the Fourth Circuit that
lay out the factual background in detail.
*See, e.g., Benford v. American Broadcast-
ing Companies,* 554 F.Supp. 145 (D.Md.
1982). For the purposes of this matter, the
facts can be quickly summarized. Mr. Ben-
ford, an insurance salesman, was invited
into a private home, where he made a sales
pitch for cancer insurance to two elderly
"prospects," defendants Hamburger and
Teitelbaum, both of whom were actually
"special senior citizen investigators of the
[House] Select Committee" on Aging.

*Benford,* 554 F.Supp. at 147. The sales pitch was surreptitiously filmed by an ABC camera crew, and it later was broadcast on the *ABC Nightly News. Id.* The plaintiff alleges that he has a cause of action for damages because, *inter alia,* of the defendants' conduct in secretly taping, and then broadcasting, his sales pitch to Hamburger and Teitelbaum.

In various orders and opinions, the most recent one issued on May 23, 1984, this Court has held that the "Congressional Defendants," among whom Hamburger and Teitelbaum have been numbered (*see Benford,* 554 F.Supp. at 147), are entitled only to limited protection from discovery inquiry under the rubric of the Speech and Debate Clause. In particular, it has been held that the immunity does not extend to the non-legislative acts of taping and broadcasting the sales meeting, as well as the conduct preparatory thereto. Memorandum and Order of May 23, 1984, at 2–3.

Although it has heretofore been assumed that all Congressional defendants are entitled to immunity, the present dispute questions that basic assumption. There appears to be little or no precedent on the narrow issue for decision, *viz.,* whether unpaid volunteers assisting in a Congressional investigation are entitled to assert any claim of Congressional immunity. Although plaintiff's counsel would state the question more narrowly, by assuming that the volunteers had not been demonstrated, on this record, to have (a) engaged in any "legislative act," (b) had any contact with a Member prior to the taping, or (c) engaged in any continuous course of performance of services, the Court is of the opinion that these assumptions do not change the basic nature of the inquiry. It is indisputably clear that the volunteers were not mere interlopers, but were "recruited" to assist in the Select Committee's field investigations by staff members of that Committee.

It was settled in *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), that Speech and Debate immunity from extra-Congressional inquiry extends to Congressional aides; any act that would be immunized were it performed by a Member, is entitled to like immunity when performed by an aide. *Id.,* 408 U.S. at 618, 628–29, 92 S.Ct. at 2623, 2628–29. The *Gravel* opinion did not undertake to define the universe of "aides" to whom immunity was made available therein. Although the Court mentioned the phrase *alter ego,* the facts in *Gravel* show that the aide involved was added to the Senator's payroll the very day the incident in issue took place. He hardly, then, had enjoyed a continuous course of employment prior to the incident, let alone a close prior relationship, as a paid staff member, with the Senator. Any doubt about the applicability of the *Gravel* holding to aides other than personal staff members has been removed, to this Court's satisfaction, by decisions in several subsequent cases. In *Doe v. McMillan,* 412 U.S. 306, 312, 93 S.Ct. 2018, 2024, 36 L.Ed.2d 912 (1973), the Court recognized the extension of immunity to a committee investigator and a consultant, and, in *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 501, 95 S.Ct. 1813, 1820, 44 L.Ed.2d 324 (1975), to a chief committee counsel. Furthermore, the lower courts have extended the protection to ancillary employees, such as those of the Congressional Research Service. *See Webster v. Sun Co., Inc.,* 561 F.Supp. 1184, 1190 (D.D.C.1983); *vacated on other grounds,* 731 F.2d 1 (D.C.Cir.1984). *See also Tavoulareas v. Piro,* 527 F.Supp. 676, 680 (D.D.C.1981).

Thus, the decided cases appear to be adopting a functional approach, that focuses not on the outward trappings of the office occupied by the aide, but, rather, on the function performed by him or her. This is consistent with the *ratio decidendi* of *Gravel, i.e.,* that the Speech and Debate Clause protects not the *persona* of the Member, but, rather, his legislative function. Thus, it would appear that, in a proper case, a volunteer information-provider would be protected. It has been recognized that such volunteers aid Congressmen in the execution of their legislative functions. *See,* Note: *The Speech or Debate Clause Protection of Congressional*

*Aides,* 91 YALE L.J. 961, 967 (1982). The functional approach taken in the decided cases would, thus, not preclude recognition of the immunity in the case of an unpaid volunteer assisting in the performance of a legitimate legislative function.

That legitimate legislative functions include information-gathering in aid of the legislative process is a long-established principle. *Eastland,* 421 U.S. at 504–05, 95 S.Ct. at 1821–22; *McGrain v. Daugherty,* 273 U.S. 135, 160, 47 S.Ct. 319, 324, 71 L.Ed. 580 (1927). In one of the most definitive cases treating the subject of legislative immunity, it was observed that Congressional aides can invoke the privilege (if it would be available to a Member similarly situated) with regard to activities involving the acquisition of knowledge through informal services. *McSurely v. McClellan,* 553 F.2d 1277, 1286–87 (D.C.Cir.1976) (per curiam). In *Tavoulareas,* 527 F.Supp. at 680, Judge Gasch fixed the outer limit of the immunity at the point where the "congressional staff cease to be the active catalyst that induces the provision of particular information to Congress...." In *Webster,* 561 F.Supp. at 1190, Judge Green held that a staff member of the Congressional Research Service was acting "well within the bounds of the speech or debate clause privilege" in receiving, without a specific request therefor, an informative memorandum about a gas-saving device, where the staff member had played a catalytic role in obtaining information through a number of sources about the device.

If the function of the employee in *Webster* justified the invocation of the legislative function privilege, then the privilege should be available to the defendants Hamburger and Teitelbaum in this case. They were not meddlesome interlopers; though volunteers, their services were clearly procured through the catalytic efforts of Committee staff. Thus, information possessed by them and transmitted to, or received by, them in the execution of legislative functions, including legitimate information-gathering, is Constitutionally privileged from discovery in this lawsuit, under the principles discussed above. Of course, as Judge Northrop has already held, the scope of their immunity does not extend to questions about their participation in the taping itself or to their preparations therefor, including conversations, meetings, and the like, preparatory to the taping session. Therefore, the proper course is for the plaintiff to resume the depositions of defendants Hamburger and Teitelbaum, and to examine them in accordance with Judge Northrop's May 23 Order.

Although plaintiff is entitled to resume the depositions and to obtain further answers to his questions, as stated above, the Court is of the opinion that the parties should bear their own costs with regard to the plaintiff's motion to compel and its sequelae, including the June 5 hearing. FED.R.CIV.P. 37(a)(4).

SO ORDERED.