546 So.2d 207 (1989)
In re INVESTIGATION OF John L. LAURICELLA, Jr.
No. CA 88 0509.
Court of Appeal of Louisiana, First Circuit.
May 16, 1989.
Writ Denied September 22, 1989.
Bruce G. Reed, Reed and Reed, New Orleans, for appellant.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall, Director, Dept. of State Civil Service.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
FOIL, Judge.
At issue in this appeal is the authority of the State Civil Service Commission to impose a fine on a person who is not a classified civil service employee who is found to be in contempt of an order issued by it. Because we hold the Commission lacked jurisdiction over the subject matter in this case, we reverse.

*208 FACTS
Appellant, John Lauricella, Jr., is the President of the Board of Commissioners of the East Jefferson Levee District (Levee District). He was elected by the Board to this position and has served in this capacity for the past 16 years. As such, Mr. Lauricella is not a member of the classified civil service.
The events leading to the challenged action in this case can be summarized as follows: On May 14, 1984, Callie Walsdorf, a police sergeant employed by the Levee District, filed an appeal with the Civil Service Commission charging that the Levee District discriminated against her on the basis of her sex in the selection of a candidate for a supervisory position. This appeal was docketed as No. 4542. On May 13, 1985, she filed a second appeal with the Commission, charging that Mr. Lauricella committed various acts against her in retaliation for having filed the previous appeal. This appeal was docketed as No. 5114 and the two appeals were consolidated for hearing.
The appeals were heard by the State Civil Service Commission on February 4, 1986. The Commission ordered an investigation with respect to the allegation of discrimination. The Commission further found that Mr. Lauricella had retaliated against Ms. Walsdorf because she filed the initial appeal. The Commission ordered the Levee District to "cease retaliating against appellant [Ms. Walsdorf] for having exercised her constitutional right to appeal." Notice of the decision was mailed to Mr. Lauricella and counsel for the Levee District.
On July 14, 1986, Ms. Walsdorf filed a third appeal with the Civil Service Commission, alleging that Mr. Lauricella had harassed her at a political meeting held on June 12, 1986, and requesting the Commission to undertake an investigation to determine whether Mr. Lauricella's conduct on that date constituted contempt of the Commission's previous decision in Docket No. 5114. The Commission ordered the Director of the Civil Service Commission to conduct an investigation as to whether Mr. Lauricella violated the Commission's order. By resolution dated July 8, 1987, the Commission ordered Mr. Lauricella to show cause why he should not be held in contempt of the Commission and a public hearing on the matter was held before the Commission on August 4, 1987.
The evidence showed that on June 12, 1986, a meeting of police personnel was called. At that time, the police forces were under the control of the Levee District. Legislation was proposed, however, to abolish the forces under the control of the Levee District and bring them under the control of the local sheriff. The Superintendent of Police called the meeting to discuss the proposed legislation, and requested that Mr. Lauricella explain the proposal to the police personnel.
Ms. Walsdorf and another police officer attended the June 12 meeting. The evidence showed that Mr. Lauricella spoke with Ms. Walsdorf, and told her he would not speak to the audience as long as she and her companion were in the room. The reason for this action was in dispute at the hearing. Ms. Walsdorf testified that Mr. Lauricella stated that the two may be "wired for civil service." Mr. Lauricella, however, testified that he did not want to speak in Ms. Walsdorf's presence because he thought she was a spy for the legislator who proposed the legislation, whom he considered to be his "mortal enemy." In any event, Ms. Walsdorf and her companion left the room, and Mr. Lauricella proceeded to address the police personnel.
The Commission concluded that Mr. Lauricella's actions at the June 12 meeting constituted contempt of its order to cease retaliating against Ms. Walsdorf and found Mr. Lauricella guilty of contempt of the Commission. The Commission fined Mr. Lauricella $500.00, stating that it felt it was "necessary to impose an economic sanction to impress upon respondent the need to read the decisions, to treat them with the dignity that Article X of the state constitution intended that they have and to insure that respondent will, in the future, not retaliate against Ms. Walsdorf."
*209 Mr. Lauricella filed this appeal, urging eighteen assignments of error. Because we find merit in his contention that the Civil Service Commission lacked jurisdiction to enter the order in this case, we pretermit discussion of the remaining assignments of error.

JURISDICTION OF THE COMMISSION
The Civil Service Commission has adopted rules authorizing it to impose economic penalties on persons it has found guilty of contempt of the Commission. Civil Service Rules 2.11 et seq. The rules define those acts constituting contempt, set out procedures for punishing for contempt and provide penalties for contempt. Civil Service Rules 2.11, 2.12 and 2.13. One of the acts defined as contempt of the Commission is the "[f]ailure of any person to comply with any order or directive of the Commission unless otherwise stayed by a Court of proper jurisdiction...." Rule 2.11(h). As to the penalties for contempt of the Commission, the rules provide that "the Commission or a Referee may punish a person adjudged guilty of contempt of the Commission or the Referee by a fine of not more than five hundred dollars ($500.00)." Rule 2.13(a). We must decide whether the Commission is vested with jurisdiction by the Constitution to penalize, by fine, a person who is not a member of the classified civil service, but who is found guilty of violating its order.
In justifying the extension of this rule and its applicable punishment to those who are not members of the classified service, the Commission stated in its opinion that the "merit system in this state would be rendered meaningless if an unclassified agency head chose to ignore the Civil Service Rules or chose not to comply with a decision rendered by the Commission in the exercise of its quasi-judicial authority...." The avowed purpose of adopting the penalty section of the rule, as stated by the Commission, "was to provide the Commission with a method whereby the Commission could compel an unclassified agency head to comply with its rules and orders." The Commission asserts that the economic sanctions provided for in Rule 2.13 were adopted solely as a means of coercing such compliance. In justifying its grant of authority to punish unclassified civil servants, the Commission stated that "[b]ecause the merit system is totally dependent upon full cooperation of the unclassified agency heads, the Commission felt that it needed something stronger than a plea to coerce such cooperation and to force compliance."
The source of the Civil Service Commission's jurisdiction is found in the Louisiana Constitution. The Constitution clothes the Commission with executive, legislative and judicial authority. Although it is true that the Commission is vested with broad rule-making powers under the constitution, its jurisdictional powers to resolve disputes before it and impose penalties in particular situations is limited by the Constitution. The Commission can neither extend nor limit the jurisdiction conferred upon it by the Constitution.
We therefore turn to the text of the Constitution in order to ascertain whether it vests jurisdiction in the Commission to impose fines upon members of the unclassified service as an enforcement mechanism. The first source of the Commission's powers, La. Const. art. 10, § 10, vests in the Commission broad rule-making and general subpoena powers for the administration and regulation of the classified service, the power to punish violators of its rules, as well as investigative powers. The rule-making authority grants to the Commission, among other enumerated powers, the power to make rules to accomplish the objectives and purposes of the merit system of civil service. The rules of the Commission, adopted pursuant to this constitutional grant of authority, are given the force and effect of law. La. Const. art. 10, § 10(A)(4).
The Constitution specifically empowers the Commission to impose penalties for violation of its rules "by demotion in or suspension or discharge from position, with attendant loss of pay." La. Const. art. 10, § 10(A)(4). La. Const. art. 10, § 10(B) empowers the Commission to investigate violations of the constitutional provisions and *210 the rules adopted pursuant to the Constitution.
The other major source of jurisdictional power of the Commission is found in La. Const. art. 10, § 12, which vests in the Commission the exclusive power and authority to hear and decide all removal and disciplinary cases. This source has been labeled the Commission's judicial jurisdiction, whereas the powers enumerated in La. Const. art. 10, § 10 have been labeled as executive and legislative in nature. Thoreson v. State Department of Civil Service, 396 So.2d 367 (La.App. 1st Cir. 1981).
In addition to vesting powers in the Commission, the Constitution contains a penalty provision for violation of the Civil Service Laws. La. Const. art. 10, § 11 provides that "[w]illful violation of any provision of this Part shall be a misdemeanor punishable by a fine of not more than five hundred dollars or by imprisonment for not more than six months, or both."
The text of the Constitution thus reveals that the Commission is empowered to impose penalties for violation of its rules. The provision, however, limits that power to three specific types of punitive measures that may be employed by the Commission, that is, removal, suspension, and demotion, with loss of pay. Clearly, this provision only vests in the Commission the authority to impose the enumerated sanctions upon members of the classified civil service for violations of its rules. Further, the Constitution itself provides a method ensuring that all members of the Civil Service comply with the orders of the Commission, including unclassified personnel, by making it a crime to willfully violate those orders. The Constitution is entirely silent on any role for the Commission in the imposition of penalties against members of the unclassified civil service for violations of its rules.
An administrative agency has only the power and authority expressly granted by the Constitution or by statute. Realty Mart, Inc. v. Louisiana Board of Tax Appeals, 336 So.2d 52, 54 (La.App. 1st Cir.1976). The powers of adjudicating and punishing for contempt are essentially judicial in nature. As a general rule, an administrative agency does not have power to impose punishment for contempt, unless constitutional provisions expressly give the agency that power. 73 C.J.S. Public Administrative Law and Procedure § 74 (1983). Also, the provisions of our constitution which delegate judicial authority to the Civil Service Commission, as they are exceptions to the general rule that district courts have jurisdiction over all civil matters, under La. Const. art. 5 § 16(A), are narrowly construed. Department of Labor, Office of Employment Security v. Leonards, 498 So.2d 178 (La.App. 1st Cir. 1986).
In our opinion, in order for the Civil Service Commission to validly punish members of the unclassified civil service for contempt, an express constitutional provision giving it that authority is essential. See Bennett v. Louisiana Wild Life and Fisheries Commission, 234 La. 678, 101 So.2d 199 (1958). In Bennett, the Supreme Court stated that the Civil Service Commission was never vested with the power and authority of courts, beyond such as were specifically granted in the Constitution itself. As an example, the Court stated that the Commissions are clearly without the power to render money judgments and enforce the payment thereof. Id. at 202.
The Commission admits that its control over unclassified civil service personnel is "marginal," citing this court's decision in In re Coon, 141 So.2d 112 (La.App. 1st Cir.1962). In that case, this court held that the Civil Service Commission did not have jurisdiction under the Constitution of 1921 to conduct an investigation of an unclassified member of the service, alleged to have violated one of the Commission's rules, even though the 1921 Constitution provided that the Commission may investigate any violation by "any person" of the provisions of the Civil Service Laws. La. Const. of 1921, art. 14, § 15(O)(4). We believe the Commission's granting to itself the power to punish members of the unclassified civil service through fines is significantly more than the exercise of "marginal control."
*211 Based on the foregoing, we conclude that the Constitution does not vest jurisdiction in the Commission to punish members of the unclassified service for contempt by the imposition of fines. Because this power was not delegated to the Commission under the Constitution, it remained with the courts. Thus, there are two avenues open to ensure compliance with the Commission's orders by unclassified personnel: a court order and a criminal prosecution. We hold that the Commission lacked jurisdiction to impose a fine on Mr. Lauricella for violating its order. Accordingly, the order of the Civil Service Commission, condemning Mr. Lauricella to pay a $500.00 fine, is hereby reversed and vacated.
REVERSED.