593 So.2d 685 (1991)
Kerry COPSEY and Cindy Copsey
v.
Michael S. BAER, III, Secretary of Senate of State of Louisiana.
No. CA 91 0912.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
Writ Denied February 14, 1992.
Theodor A. Schirmer, Baton Rouge, for plaintiff-appellant Kerry & Cindy Copsey.
Charles William Roberts, Baton Rouge, for defendant-appellee Administrator Research *686 Services & Larry A. Bankston, & Donald G. Kelly, intervenors.
Before LOTTINGER, EDWARDS and CARTER, JJ.
EDWARDS, Judge.
This appeal places at issue the relation between La. Const. art. III, § 8, which establishes a privilege for legislative "speech," and Louisiana's Public Records Law, LSA-R.S. 44:1-44, which ensures public access to "public records." This matter is res nova in Louisiana.

Facts
On October 31, 1990, plaintiffs, Kerry and Cindy Copsey (the Copseys), through their counsel of record, delivered a formal demand letter to Mr. Jerry Guillot, (Guillot) Administrator of Research Services, requesting copies of the work files related to two legislative bills: SB 701, Reg.Sess. (1988), by Senator Donald G. Kelly, and SB 7, 2d Extraordinary Sess. (1989), by Senator Larry Bankston. The request was predicated on Louisiana Public Records Law, LSA-R.S. 44:1-44, specifically LSA-R.S. 44:32(A) and (C)(2).[1] By way of letter dated November 5, 1990, Guillot informed the Copseys' counsel that the requested material was privileged, based on La. Const. art. III, § 8,[2] and that both Senators Kelly and Bankston had declined to waive the privileges granted to them by law.
On December 21, 1990, the Copseys filed an action in state district court for writ of mandamus, under LSA-R.S. 44:35(A), seeking an order allowing them to copy the requested files, and also seeking declaratory and injunctive relief against defendant preventing him from "future denials of such request for similar files from the public record."[3] In connection with this action, the Copseys had a subpoena duces tecum issued to Guillot ordering him to produce the requested material. The petition for mandamus was subsequently amended to name as defendant Michael S. Baer, III, Secretary of the Senate, and the parties agreed to dismiss Guillot as a party defendant.
On March 5, 1991, Larry A. Bankston and Donald G. Kelly, in their capacities as elected legislators, filed an intervention in the lawsuit, individually asserted their legislative privilege, and asked the court to dismiss plaintiffs' request and declare the materials sought privileged. The senators also filed a motion to quash the subpoena duces tecum.
On March 8, 1991, a hearing was held in the matter and a judgment was signed on March 11, 1991, denying the petition for mandamus, quashing the subpoena duces tecum, finding the legislative materials to be privileged and issuing an order protecting the senate against any and all requests for legislative materials prepared in advance of the introduction of the bills at issue. The Copseys appealed.

I.
Louisiana's Public Records Law is codified in LSA-R.S. 44:1-44, and is predicated on La. Const. art. XII, § 3, which states: "No person shall be denied the right to observe the deliberations of public bodies *687 and examine public documents, except in cases established by law." (emphasis added). LSA-R.S. 44:1(A)(2) designates a list of documentary materials which are deemed to be "... `public records' except as otherwise provided in this Chapter or as otherwise specifically provided by law." (emphasis added). LSA-R.S. 44:31, which establishes the public's right to view "public records" also limits the right of access by providing that "[e]xcept as otherwise provided in this Chapter or as otherwise specifically provided by law, ... any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record." (emphasis added).
However, the issue presented to this court is not the applicability of exemptions from public disclosure as established by the Louisiana Public Records Law, but rather the applicability of La. Const. art. III, § 8, Legislative Privileges and Immunities, vis a vis La. Const. art. XII, § 3, Right to Direct Participation.

II.
Does La. Const. art. III, § 8, grant immunity to the disclosure of legislative records?
La. Const. art. XII, § 3 mandates the right of the public to examine public documents, "except in cases established by law." This particular provision is not found in Louisiana Constitutions predating the Constitution of 1974. A public records law was first established in Louisiana in 1940. See Act 195 of 1940 Reg.Sess. Thus, legislation predated any constitutional mandate for public examination of public documents. In explaining the proposed section to the delegates to the Constitutional Convention of 1973, Delegate Jenkins said:
Mr. Chairman, delegates, this is to create the presumption that public meetings and public records are open to the public unless a specific law denies access to them. This won't change any of our statutes. Our statutes presently spell out which cases are denied, and really the relevance of this is to say that in cases where there is no law on the subject that if there has not been a specific denial of the right to public access, then access would be allowed either to the meeting or the public document involved. So, I urge the adoption of this Section.
Vol. IX, pp. 3072-73, Records of the Louisiana Constitutional Convention of 1973.
There was no further discussion of this section, and this section was adopted.
The significance of the presentation by Delegate Jenkins is that the delegates knew statutes were already in existence to require the examination of public documents, and that no change was intended in the manner in which the access to public records was then envisioned or exercised.
Every constitution of Louisiana since the admission of Louisiana to statehood on April 30, 1812, has contained a provision for legislative privileges and immunities. Thus, prior to the Louisiana Constitution of 1974, in any contest between the right of the public to examine legislative records under Act 195 of 1940 and its progeny, Title 44, and the constitutional legislative privileges and immunities provision, the privileges and immunities provision would prevail. We discern no intention on the part of the delegates to the convention to provide otherwise. Therefore, the legislative privileges and immunities provision prevails.

III.
For those who would argue that art. III, § 8 and art. XII, § 3 have equal standing irrespective of comments by Delegate Jenkins to the Constitutional Convention, we merely need point out that art. XII, § 3 is applicable "except in cases established by law." Art. III, § 8 is a "law" within the meaning of the except clause. Therefore, art. III, § 8 would still prevail.

IV.
Every Louisiana constitution since 1812, except the 1974 constitution, has contained within the legislative privileges and immunities clause the phrase, "speech or debate," just as does the federal constitution *688 in art. I, § 6, cl. 1.[4] A complete review of the records of the Constitutional Convention of 1973 leads us to the conclusion that the change from "speech or debate" to "speech" was for stylistic reasons only. Therefore, the legislative privileges and immunities clause in both the state and federal constitutions are identical. Since no Louisiana court has interpreted La. Const. art. III, § 8, we look for guidance to federal jurisprudence in interpreting the meaning and scope of the legislative privileges and immunities clause.
The privilege is rooted in the separation-of-powers doctrine. Its "`central role' ... is to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." Miller v. Transamerican Press, Inc., 709 F.2d 524, 528 (9th Cir.1983), citing Eastland v. United States Servicemen's Fund, 421 U.S. 491, 502, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975). The privilege extends to freedom of speech in the legislative forum; when members are acting within the "legitimate legislative sphere," the privilege is an absolute bar to interference. Miller, 709 F.2d at 528 (citations omitted). The courts have adopted various tests to determine what conduct falls within this "sphere" of privilege. One of the earliest descriptions of such conduct is "anything generally done in a session of the House by one of its members in relation to the business before it." Kilbourn v. Thompson, 103 U.S. 168, 204, 26 L.Ed. 377 (1881). In a more recent analysis, the Supreme Court in Gravel v. United States, 408 U.S. 606, 624, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972) stated:
Insofar as the [Speech and Debate] Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.
In United States v. Gillock, 445 U.S. 360, 366-67, 100 S.Ct. 1185, 1190, 63 L.Ed.2d 454 (1980), the Supreme Court reiterated its prior holdings that "[t]he Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." In Miller, 709 F.2d at 524, the Ninth Circuit was faced with determining whether the legislative privilege attached to prevent the questioning of a congressman regarding the identity of a person who had inserted a magazine article into the congressional record. The court utilized a two-part test and determined that information regarding the insertion of material into the congressional record was within the "legitimate legislative sphere" and thus, not subject to disclosure. First, the activity was found to be an integral part of the deliberative and communicative processes by which members participate in committee and house proceedings, and second, the activity addressed proposed legislation or some other subject within congress' constitutional jurisdiction. Miller, 709 F.2d at 529. Since the test was met, the court upheld the claim of privilege, stating:
"[o]btaining information pertinent to potential legislation or investigation is one of the things generally done in a session of the House concerning matters within the `legitimate legislative sphere'.... Constituents may provide data to document their views when urging the congressman to initiate or support some legislative action.... The possibility of public exposure could constrain these sources. It could deter constituents from candid communication with their legislative representatives and otherwise cause the loss of valuable information.... Even more to the point, it *689 would chill speech and debate on the floor.... We conclude that the privilege extends to questions about a Congressman's sources of information."
Miller, 709 F.2d at 530-31.
In light of the above, we agree with counsel for the appellees that "[r]educed to its essentials, the Copseys' demand for legislative files in this case calls for an inquiry into the motivations behind the preparation and introduction of legislative instruments into the Louisiana Legislature, an inquiry that goes to the very core of the legislative process." Accordingly, we find that the files requested are legislative acts, exempt from the provisions of Louisiana's public records law, as "otherwise specifically provided by" La. Const. art. III, § 8.

V.
Plaintiffs argue that the privilege was not properly invoked by the senators in this action. We find no merit to this argument. The Copseys were informed by Guillot that both senators had declined to waive the privilege. The senators then expressly invoked the privilege in the petition for intervention and the motion to quash the subpoena duces tecum. The senators made an effective and valid assertion of their privileges.
We find that the trial judge did not err in dismissing the plaintiffs' petition for writ of mandamus. Accordingly, the judgment of the trial court is affirmed, at the appellants' costs.
AFFIRMED.
CARTER, J., concurs.
NOTES
[1] LSA-R.S. 44:32(A) provides, in pertinent part:

The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; ....
LSA-R.S. 44:32(C)(2) provides, in pertinent part: "For all public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to persons so requesting."
[2] La. Const. art. III, § 8 provides:

A member of the legislature shall be privileged from arrest, except for felony, during his attendance at sessions and committee meetings of his house and while going to and from them. No member shall be questioned elsewhere for any speech in either house. (emphasis added).
[3] The plaintiffs alleged that they are presently involved in a civil rights action and that the information believed to be contained in the requested files is "necessary for the furthering of plaintiffs' cause in said suit."
[4] U.S. Const. art. I, § 6, cl. 1 provides, in pertinent part:

The Senators and Representatives ... shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.