991 So.2d 531 (2008)
In re Jeffery J. ARNOLD and Alexander Heaton.
No. 2007 CW 2342.
Court of Appeal of Louisiana, First Circuit.
May 23, 2008.
*533 Alfred W. Speer, Mary Quaid, Baton Rouge, LA, for Relators, Jeffery J. Arnold and Alexander Heaton.
Kathleen M. Allen, Baton Rouge, LA, for Respondent, Louisiana Board of Ethics.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
WHIPPLE, J.
In this writ application, Jeffery J. Arnold and Alexander Heaton challenge a ruling by the Louisiana Board of Ethics, denying their exception of jurisdiction ratione materiae, and concluding that it had jurisdiction to proceed with a public hearing to investigate charges issued against Arnold and Heaton. For the following reasons, we vacate the ruling of the Board of Ethics on the basis that it lacked the authority to adjudicate the jurisdictional issue presented, and we further render judgment maintaining Arnold and Heaton's exception of jurisdiction ratione materiae and dismissing the charges pending *534 against them in Ethics Board Docket No. 2006-217.

PROCEDURAL HISTORY
Following a private investigation, the Louisiana Board of Ethics ("the Board"), by a majority vote at its January 9, 2007 meeting, issued certain charges against Louisiana State Representatives Jeffery J. Arnold and Alexander Heaton, alleging that Arnold and Heaton violated Section 1112(B)(1) of the Code of Governmental Ethics by participating in the discussion of House Bills 50 and 69 of the 2006 1st Extraordinary Legislative Session and the discussion and vote of House Bill 656 of the 2006 Regular Legislative Session, concerning consolidation of the Assessor's Office in Orleans Parish, while Arnold's father and Heaton's brother served as elected assessors in Orleans Parish.[1] The Board set the matters for public hearing on August 9, 2007.
On March 6, 2007, Arnold and Heaton jointly filed a petition for declaratory judgment and injunction in the Nineteenth Judicial District Court, seeking a judgment declaring that the privileges and immunities set forth in Louisiana Constitution article III, section 8 bar the Board from investigating, prosecuting, adjudicating, and penalizing them for participation in the legislative process during their service in the legislature when acting within the sphere of legislative activity, and enjoining the Board from pursuing any currently pending investigations, prosecutions, adjudications, or penalties against Arnold and Heaton for their participation in the legislative process.[2]
In the declaratory judgment suit, the Board filed exceptions raising the objections of lack of subject matter jurisdiction and prematurity. By judgment dated April 19, 2007, the district court denied the Board's declinatory exception of lack of subject matter jurisdiction, but maintained the Board's dilatory exception of prematurity. In its oral reasons, the district court found that Arnold and Heaton had to first assert their constitutional issues to the Board prior to or during the public hearing and that the Board had to make an initial determination as to whether the actions of Arnold and Heaton were protected or if the Board was exceeding its authority or jurisdiction in pursuing the charges against Arnold and Heaton.
Arnold and Heaton appealed that judgment, contending that the trial court erred in finding that they had to present their constitutional arguments as to the meaning and scope of LSA-Const. art. III, sec. 8 to the Board prior to seeking a declaratory judgment from the district court.[3] Meanwhile, however, on August 2, 2007, Arnold and Heaton filed an exception of jurisdiction ratione materiae, i.e., an exception to subject matter jurisdiction, before the Board, setting forth their argument that *535 the Legislative Privileges and Immunities Clause, LSA-Const. art. III, sec. 8, removed from the Board the power and authority to investigate, prosecute, adjudicate, and potentially punish Arnold and Heaton for their participation in the legislative process. Following a hearing, the Board denied their exception.
Arnold and Heaton then filed the instant writ application with this court, seeking a determination that the Board erred in denying the exception and seeking a stay of all proceedings before the Board, particularly the public hearing scheduled for December 13, 2007 to explore the charges against Arnold and Heaton. On December 6, 2007, this court referred the merits of the writ application to the panel handling the related appeal in the declaratory action suit and granted the plaintiffs' request for a stay pending further orders of this court. In Re: Jeffery J. Arnold and Alexander Heaton, 2007 CW 2342 (La.App. 1st Cir.12/6/07) (unpublished). Thereafter, by order dated January 18, 2008, this court granted certiorari in this matter and ordered the Board to file with this court copies of the record of the proceedings before the Board. In Re: Arnold and Heaton, 2007 CW 2342 (La.App. 1st Cir.1/8/08) (unpublished).
In their writ application, Arnold and Heaton contend that the Board erred in denying their exception of jurisdiction ratione materiae, asserting that the Board was without authority to interpret the Louisiana Constitution and that their speech within the legislature was protected from being questioned "elsewhere" other than in the House of Representatives, by LSA-Const. art. III, sec. 8.

DISCUSSION

The Board's Authority to Decide the Issue of Jurisdiction
As noted above, Louisiana Constitution article III, section 8 provides that no member of the legislature shall be questioned "elsewhere for any speech in either house." Thus, the question presented by the exception of jurisdiction ratione materiae is whether LSA-Const. art. III, sec. 8 removes from the Board jurisdiction to investigate, prosecute, adjudicate, and potentially punish Arnold and Heaton for their alleged violation of section 1112(B)(1) of the Code of Governmental Ethics. LSA-R.S. 42:1112(B)(1). While the Board determined that this constitutional provision did not remove jurisdiction from it to investigate the charges herein, and thus denied the exception, this court finds merit to Arnold and Heaton's argument that because the Board lacks the authority to interpret the Louisiana Constitution, it was without authority to rule on the exception of jurisdiction ratione materiae, an issue more properly decided in the courts.
Louisiana Constitution article V, section 1 provides that "[t]he judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." Pursuant to LSA-Const. art. V, sec. 16, "[e]xcept as otherwise authorized by this constitution ..., a district court shall have original jurisdiction of all civil and criminal matters."
An administrative agency or board has only the power and authority expressly granted by the constitution or statutes. Louisiana Horsemen's Benevolent and Protective Association 1993, Inc. v. Fair Grounds Corporation, 95-1702 (La.App. 1st Cir.4/4/96), 672 So.2d 340, 342, writs denied, 96-1163, 96-1125 (La.6/7/96), 674 So.2d 968, 969. Hearings and determinations by administrative agencies and boards are often described as quasi-judicial, for, like the courts, these *536 bodies adjudicate important rights. ANR Pipeline Company v. Louisiana Tax Commission, 2001-2594 (La.App. 1st Cir.3/20/02), 815 So.2d 178, 184. However, while the adjudicative and fact-finding powers exercised by these agencies and boards mimic those exercised by courts, the agencies are not authorized to exercise "judicial power" under LSA-Const. art. V, sec. 1. ANR Pipeline Company, 815 So.2d at 184. Provisions of the Louisiana Constitution granting quasi-judicial authority to administrative agencies and boards are exceptions to the general rule that district courts have jurisdiction over all civil matters, and, as such, are narrowly construed. See In re Investigation of Lauricella, 546 So.2d 207, 210 (La.App. 1st Cir.), writ denied, 548 So.2d 330 (La.1989).
Article X, section 21 of the Louisiana Constitution provides such an exception to the general rule granting district courts original jurisdiction by authorizing the creation of a board as a tribunal of limited jurisdiction as follows:
The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal. (Emphasis added).
Pursuant to the authority of LSA-Const. art. X, sec. 21[4], the legislature enacted a Code of Governmental Ethics, LSA-R.S. 42:1101 et seq., which provided for the creation of the Louisiana Board of Ethics in LSA-R.S. 42:1132. The Board is charged with enforcing the Louisiana Code of Governmental Ethics and establishing procedures to be followed. See LSA-R.S. 42:1132 and LSA-R.S. 42:1134. All proceedings conducted by the Board or a panel of the Board shall be subject to and in accordance with the provisions of the Administrative Procedure Act. LSA-R.S. 42:1143.
The purpose of the Code of Governmental Ethics is to further the public interest by ensuring that the law protects against conflicts of interest on the part of Louisiana's public officials and state employees by establishing ethical standards to regulate the conduct of those persons. See LSA-R.S. 42:1101. To this end, the eleven-member Board is given the authority to investigate and pursue formal charges through either public or private hearings against an individual or entity for alleged violations of the Code of Ethics. See LSA-R.S. 42:1134. A determination that the accused has violated a provision of law within the jurisdiction of the Board must be based on competent evidence presented at a duly noticed public hearing. LSA-R.S. 42:1141(E)(5), (10), and (11)(a).[5] Upon finding a violation of the Code, the Board has the authority to impose various penalties on the responsible party. See LSA-R.S. 42:1151-1157.3.
Thus, pursuant to the constitutional and statutory scheme outlined above, the *537 Board is empowered to administer and enforce the Louisiana Code of Governmental Ethics and to investigate and pursue formal charges through either public or private hearings against an individual or entity for alleged violations of the Code of Governmental Ethics. See LSA-Const. art. X, § 21, LSA-R.S. 42:1132, & LSA-R.S. 42:1134. Additionally, a determination of the application or interpretation of the Code of Governmental Ethics is within the grant of exclusive jurisdiction of certain subject matter to the Board (as long as a constitutional challenge to a provision of the Code of Governmental Ethics is not involved), which thereby results in the subtraction of those matters from the district court's jurisdiction. Duplantis v. Louisiana Board of Ethics, XXXX-XXXX, XXXX-XXXX (La.3/23/01), 782 So.2d 582, 592.
On the other hand, the courts of this state have consistently held that administrative agencies do not have the authority to determine questions of constitutionality. Albe v. Louisiana Workers' Compensation Corporation, 97-0581 (La.10/21/97), 700 So.2d 824, 827-828. Determination of constitutionality of acts of the legislature represents the highest exercise of judicial power and one that even the judiciary is reluctant to exercise. Albe, 700 So.2d at 828.
However, a determination of the merits of Arnold and Heaton's exception of jurisdiction does not involve a determination of the constitutionality of a statute, a determination over which the Board would clearly have no jurisdiction. Moreover, it does not directly involve a determination of the application or interpretation of the Code of Governmental Ethics, a determination over which the Board would clearly have jurisdiction. Here, Arnold and Heaton's exception involves the interpretation and application of a constitutional provision, i.e., LSA-Const. art. III, sec. 8, as a potential limit upon the power and authority of the Board to administer and enforce the Code of Governmental Ethics. Thus, the question is whether the Board has the authority or jurisdiction to interpret the scope of a constitutional provision and to determine whether that constitutional provision applies and places any limits upon its jurisdiction to administer and enforce the Code of Governmental Ethics.
In Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 601 So.2d 1383 (La.1992), the Louisiana Supreme Court addressed the issue of whether the Public Service Commission had subject matter jurisdiction to interpret a franchise contract and to determine the legal right of the City of Franklin to grant another franchise. In determining that the Commission did not have jurisdiction, the Court noted that LSA-Const. art. V, sec. 16 vests the districts courts with "original jurisdiction of all civil and criminal matters," unless there is other jurisdictional authorization in the Constitution. Central Louisiana Electric Company, Inc., 601 So.2d at 1385. The Court further determined that the Commission had constitutional and statutory jurisdiction over subject matters which principally involved the right to fix and regulate rates charged by and services furnished by public utilities, but that issues of validity and enforcement of contracts and the interpretation of statutes and municipal charters are generally civil matters over which the district courts have original jurisdiction. Central Louisiana Electric Company, Inc., 601 So.2d at 1386-1387.
Similarly, in City of Plaquemine, City Light and Water Plant v. Louisiana Public Service Commission, 96-1417 (La.1/14/97), 685 So.2d 1074, 1078, the Louisiana Supreme Court held that the Public Service Commission did not have jurisdiction to determine whether a utility had *538 violated LSA-R.S. 45:123, articulating that the matter was "clearly a matter of statutory interpretation and the district courts have original jurisdiction." The Court explained that the Commission's "charge does not include statutory interpretation" and that it had "no authority to operate outside of its constitutional mandate."[6]City of Plaquemine, City Light and Water Plant, 685 So.2d at 1078 (emphasis added).
In the instant case, as set forth above, the Board has been granted the authority, or has been given subject matter jurisdiction, to administer and enforce the Louisiana Code of Governmental Ethics, to investigate and pursue formal charges through either public or private hearings against an individual or entity for alleged violations of the Code of Ethics, and to determine the application or interpretation of the Code of Governmental Ethics where a constitutional challenge to a provision of the Code of Governmental Ethics is not involved. See LSA-Const. art. X, § 21, LSA-R.S. 42:1132, & LSA-R.S. 42:1134; Duplantis, 782 So.2d at 592.
However, the Board's constitutional and statutory authority does not appear to extend to interpretation of constitutional provisions or to determinations of the effect of those constitutional provisions on the Board's authority or jurisdiction. See Central Louisiana Electric Company, Inc., 601 So.2d at 1386-1387, City of Plaquemine, City Light and Water Plant, 685 So.2d at 1078, and Wooley, 928 So.2d at 622-623. While these cited cases did not involve the jurisdiction or authority of the Board of Ethics, we conclude that the pronouncements therein that the district courts have original jurisdiction over matters of statutory interpretation would be equally (or more) applicable herein, given that this matter undisputedly involves interpretation of constitutional provisions.
In doing so, we recognize that the Board has some authority to determine "jurisdiction" inherent in its consideration of an ethics matter. A reading of LSA-R.S. 42:1141, setting forth the procedure for instituting an investigation and hearing, suggests that the Board has the authority to determine whether a matter is within its jurisdiction. Subsection (C)(2) of this statute provides, in part, that "[a]fter the investigation has been completed, the board shall determine whether to conduct a public hearing to receive evidence and to determine whether any violation of any provision of law within its jurisdiction has occurred, and if a violation has occurred, to prescribe authorized penalties." (Emphasis added.)
Moreover, even if that authority were not explicitly granted, the jurisprudence provides that while an administrative agency or board has only the power and authority expressly granted by the constitution and statutes, some power or authority may be implied as necessary or appropriate in order to effectuate the express powers granted.[7]RMI v. Southdown *539 Care Center, 98-2430 (La.App. 1st Cir.12/28/99), 747 So.2d 809, 812, writ denied, XXXX-XXXX (La.3/17/00), 757 So.2d 640.
However, because even this initial determination of jurisdiction in the instant matter involves interpretation of a constitutional provision that has been a part of every Louisiana Constitution since our initial constitution, LSA-Const. of 1812, art. II sec. 20, and the United States Constitution, U.S. Const. art. I, sec. 6, cl. 1, with roots in the struggles between the English Crown and Parliament that began centuries ago, see Kilbourn v. Thompson, 103 U.S. 168, 201-202, 26 L.Ed. 377 (1880), and Copsey v. Baer, 593 So.2d 685, 687-688 (La.App. 1st Cir.1991), writ denied, 594 So.2d 876 (La.1992), we are constrained to conclude that determination of this issue exceeds the constitutional and statutory authority or jurisdiction of the Board of Ethics.
Accordingly, we vacate the Board's ruling on Arnold and Heaton's exception on the basis that the Board lacks the authority to adjudicate its own jurisdiction to proceed with the charges in that such a determination involves constitutional interpretation, a function outside of the jurisdiction of the Board. Nonetheless, we note that the parties have repeatedly sought clarification as to the appropriate forum for resolution of these issues, and we now have a complete record before us through this writ application and the related appeal filed herein.[8] Thus, given the overriding public interest in obtaining a speedy resolution of these issues and in fairness to the parties, who are entitled to resolution and the avoidance of further delay, we will consider the merits of the issue of the Board's jurisdiction to proceed with the charges filed against Arnold and Heaton.

The Board's Authority to Pursue Charges Against Arnold and Heaton
Article X, Section 21 of the Louisiana Constitution directs the Louisiana Legislature to enact a code of ethics for *540 state officials and employees, to be administered by one or more boards.[9] Specifically, it provides:
The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal.
LSA-Const. art. X, § 21. Pursuant to the authority of LSA-Const. art. X, sec. 21, the legislature enacted a Code of Governmental Ethics, LSA-R.S. 42:1101 et seq., which provides for the creation of the Louisiana Board of Ethics in LSA-R.S. 42:1132. The Board is charged with enforcing the Louisiana Code of Governmental Ethics and establishing procedures to be followed. See LSA-R.S. 42:1132. All proceedings conducted by the Board or a panel of the Board shall be subject to and in accordance with the provisions of the Administrative Procedure Act. LSA-R.S. 42:1143.
The purpose of the Code of Governmental Ethics is to further the public interest by ensuring that the law protects against conflicts of interest on the part of Louisiana's public officials and state employees by establishing ethical standards to regulate the conduct of those persons. See LSA-R.S. 42:1101. To this end, the eleven-member Board is given the authority to investigate and pursue formal charges through either public or private hearings against an individual or entity for alleged violations of the Code of Governmental Ethics. See LSA-R.S. 42:1134. A determination that the accused has violated a provision of law within the jurisdiction of the Board must be based on competent evidence presented at a duly noticed public hearing. LSA-R.S. 42:1141(E)(5), (10), and (11)(a). Upon finding a violation of the Code, the Board has the authority to impose various penalties on the responsible party. See LSA-R.S. 42:1151-1157.3.
Thus, pursuant to the constitutional and statutory scheme outlined above, the Board of Ethics is empowered to administer and enforce the Louisiana Code of Governmental Ethics and to investigate and pursue formal charges through either public or private hearings against an individual or entity for alleged violations of the Code of Ethics;. See LSA-Const art. X, § 21, LSA-R.S. 42:1132, & LSA-R.S. 42:1134.
As stated above, the Board issued charges against Arnold and Heaton for alleged violations of Section 1112(B)(1) of the Code of Governmental Ethics, LSA-R.S. 42:1112(B)(1), based on their participation in the deliberation and debate of and vote on various bills during the 1st Extraordinary and Regular Legislative Sessions of 2006. Section 1112(B)(1) of the Code of Governmental Ethics prohibits any public servant from participating in a transaction involving the governmental entity in which, to his knowledge, any member of his immediate family has a substantial economic interest, except as provided in LSA-R.S. 42:1120.[10] LSA-R.S. 42:1112(B)(1).
*541 However, Arnold and Heaton contend that because the alleged violations of Section 1112(B)(1) herein involve their participation in the legislative process, the Board is barred by LSA-Const. art. III, sec. 8 from investigating, prosecuting, adjudicating, and potentially punishing them for these charges.
Louisiana Constitution article III, section 8, the Legislative Privileges and Immunities Clause, provides, as follows:
A member of the legislature shall be privileged from arrest, except for felony, during his attendance at sessions and committee meetings of his house and while going to and from them. No member shall be questioned elsewhere for any speech in either house.
(Emphasis added). Thus, the question presented by the exception of jurisdiction ratione materiae is whether LSA-Const. art. III, sec. 8 removes from the Board jurisdiction to investigate, prosecute, adjudicate, and potentially punish Arnold and Heaton for their alleged violation of section 1112(B)(1) of the Code of Governmental Ethics by the language that "[n]o member shall be questioned elsewhere for any speech" in the House of Representatives or the Senate.
The Legislative Privileges and Immunities Clause embodied in LSA-Const. art. III, sec. 8 has been contained in every Louisiana Constitution since 1812.[11]Copsey, 593 So.2d at 687-688. In Copsey, this court noted that, in interpreting LSA-Const. art. III, sec. 8, we look for guidance to federal jurisprudence interpreting U.S. Const. art. I, sec. 6, cl. 1, the federal Speech or Debate Clause, which this court determined was "identical" to Louisiana's Legislative Privileges and Immunities Clause.[12]Copsey, 593 So.2d at 688.
As noted by the United States Supreme Court, the privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the sixteenth and seventeenth centuries, having first been included in the English Bill of Rights of 1689. Tenney v. Brandhove, 341 U.S. 367, 372, 71 S.Ct. 783, 786, 95 L.Ed.2d 1019(1951). See also United States v. Johnson, 383 U.S. 169, 177-178, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966). This formulation of 1689 was the culmination of a conflict between the Commons and the Tudor and Stuart monarchs during which successive monarchs utilized the criminal and civil law to suppress and intimidate critical legislators. Johnson, 383 U.S. at 178, 86 S.Ct. at 754.
*542 Freedom of speech and action in the legislature was taken as a matter of course by those who severed the colonies from the Crown and founded our nation. It was deemed so essential for representatives of the people that it was written into the Articles of Confederation and later into the United States Constitution. Tenney, 341 U.S. at 372, 71 S.Ct. at 786. Additionally, as stated above, Louisiana's Legislative Privileges and Immunities Clause has been included in every Louisiana constitution since 1812. Copsey, 593 So.2d at 687-688.
This legislative privilege has been recognized as an important protection of the independence and integrity of the legislature by preventing intimidation of legislators by the executive and judicial branches, and, in American governmental structure, the clause serves the additional function of reinforcing the separation-of-powers doctrine so deliberately established by the Founders. Johnson, 383 U.S. at 178, 86 S.Ct. at 754; See also Copsey, 593 So.2d at 688. The privilege provides not only a defense on the merits, but also protects legislators from the burden of defending themselves. Powell v. McCormack, 395 U.S. 486, 502-503, 89 S.Ct. 1944, 1954, 23 L.Ed.2d 491 (1969).
The United States Supreme Court has further articulated that it has remained unquestioned that the claim of an unworthy purpose does not destroy the privilege granted in the Speech or Debate Clause, noting that it is not consonant with our scheme of government for a court to inquire into the motives of legislators. Tenney, 341 U.S. at 377, 71 S.Ct. at 788. The Court further noted:
In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses.
Tenney, 341 U.S. at 378, 71 S.Ct at 789 (footnote omitted).
The extent of the privilege is the question presented herein. The privilege extends to freedom of speech in the legislative forum, and when members are acting within the "legitimate legislative sphere," the privilege is an absolute bar to interference. Copsey, 593 So.2d at 688, citing Miller v. Transamerican Press, Inc., 709 F.2d 524, 528 (9th Cir.1983). Moreover, the legislative privilege is to be read broadly to effectuate its purposes. Johnson, 383 U.S. at 180, 86 S.Ct. at 755.
In 1881, the United States Supreme Court described the actions within the sphere of the privilege of the Speech or Debate Clause as including "things generally done in a session of the House by one of its members in relation to the business before it." Kilbourn, 103 U.S. at 204. The Court in Kilbourn noted that "[i]t would be a narrow view of the constitutional provision to limit it to words spoken in debate" and that the reason for the privilege applied as forcibly to written reports presented in the legislative body, to resolutions offered, and to the act of voting, whether it is done vocally or by passing between the tellers.[13]Kilbourn, 103 U.S. at 204.
*543 The Supreme Court has further held that the Speech or Debate Clause protects against outside inquiry into acts that occur in the regular course of the legislative process and precludes any showing of how a legislator acted, voted, or decided. United States v. Helstoski, 442 U.S. 477, 489, 99 S.Ct. 2432, 2439, 61 L.Ed.2d 12 (1979), citing United States v. Brewster, 408 U.S. 501, 525-526, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972).
Additionally, the Supreme Court has further defined activities within the "legitimate legislative sphere" as those activities that are "an integral part of the deliberative and communicative processes" by which members participate in committee and house proceedings "with respect to the consideration and passage or rejection of proposed legislation" or with respect to other matters which the United States Constitution places within the jurisdiction of either house of Congress. Eastland v. United States Servicemen's Fund, 421 U.S. 491, 504, 95 S.Ct. 1813, 1821-1822, 44 L.Ed.2d 324 (1975), quoting Gravel v. United States, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972).
Applying the above interpretation of the Speech or Debate Clause in the federal jurisprudence to Louisiana's Legislative Privileges and Immunities Clause, we conclude that LSA-Const. art. III, sec. 8 grants to the legislature the sole jurisdiction to investigate, "question," or punish legislators for any actions by them within the "legitimate legislative sphere." The complained-of actions of Arnold and Heaton in their participation in the discussion and vote of various House bills clearly falls within the "legitimate legislative sphere." As such, LSA-Const. art. III, sec. 8 bars any questioning of their actions "elsewhere," other than in the House of Representatives.
In opposition to Arnold and Heaton's writ application, the Board argues that the privilege afforded legislators by LSA-Const. art. III, sec. 8, precluding them from being questioned "elsewhere" for their actions in either house, has been "explicitly and unequivocally waived" by the Louisiana Legislature by the enactment of the Code of Governmental Ethics. Specifically, the Board contends that the legislature was constitutionally mandated, by LSA-Const. art. III, sec. 9 and LSA-Const. art. X, sec. 21, to enact a code of ethics governing all officials and employees of the sate and its political subdivisions, including members of the legislature. The Board argues that the legislature had the option to enact a code of ethics governing only the legislature, separate from the code of ethics governing other elected officials and public employees. However, the Board points out, the legislature enacted only one Code of Governmental Ethics, which is also applicable to legislators. Thus, the Board contends that the enactment of one Code of Governmental Ethics, applicable to all officials and employees, including legislators, "creat[ed] an institutional waiver of the [Legislative Privileges and Immunities Clause] granted to legislators with respect to the application of the Code of [Governmental] Ethics and issues concerning the use by a legislator of his elected office for private gain." (Emphasis added).
The United States Supreme Court addressed the issue of an "institutional waiver" of the privileges granted in the Speech or Debate Clause in Helstoski. Therein, the U.S. Government argued that Congress had waived the privileges granted to members of Congress in the Speech or *544 Debate Clause by enacting 18 U.S.C. § 201.[14] The Government contended that 18 U.S.C. § 201 represented "a collective decision to enlist the aid of the Executive Branch and the courts in the exercise of Congress' powers under Art. I, § 5, to discipline its Members."[15]Helstoski, 442 U.S. at 492, 99 S.Ct. at 2441. While the Court recognized that "an argument [could] be made from precedent and history that Congress, as a body, should not be free to strip individual Members of the protection guaranteed by the [Speech or Debate] Clause, from being `questioned' by the Executive in the courts," the Court nonetheless declined to decide that particular issue. Helstoski, 442 U.S. at 492-493, 99 S.Ct. at 2441.
Rather, the Court held that, assuming, arguendo, that Congress could constitutionally waive the protection of the Speech or Debate Clause for individual members, such a waiver could be shown only by an "explicit and unequivocal expression." Helstoski, 442 U.S. at 493, 99 S.Ct. at 2442 (emphasis added). The Court then concluded that neither the language nor legislative history of 18 U.S.C. § 201 evidenced such an "explicit and unequivocal" waiver of the protection of the Speech or Debate Clause. Helstoski, 442 U.S. at 493, 99 S.Ct. at 2442. Similarly, in the instant case, we conclude that, even assuming arguendo, that the Louisiana Legislature could institutionally waive the privileges granted to individual legislators in the Legislative Privileges and Immunities Clause, neither the language of LSA-R.S. 42:1101 et seq. nor the available legislative history evidence such an explicit and unequivocal waiver of the protection of the Legislative Privileges and Immunities Clause, LSA-Const. art. III, sec. 8.
In sum, reading LSA-Const. art. III, sec. 8, LSA-Const. art. III, sec. 9, and LSA-Const. art. X, sec. 21 to give each constitutional provision full effect, we conclude that art. X, sec. 21 mandates that the legislature enact a comprehensive code of ethics and create one or more boards to administer that code, a mandate which was satisfied by the legislature's enactment of the Code of Governmental Ethics and creation of the Board of Ethics through LSA-R.S. 42:1101, et seq. Likewise, LSA-Const. art. III, sec. 9 mandates that legislators are prohibited from realizing personal gain through official conduct and that the legislature enact a code to prohibit such behavior. That mandate has also been satisfied by the enactment of LSA-R.S. 42:1101, et seq., which is applicable to legislators, as well as other elected officials, except judges, and public employees. LSA-R.S. 42:1101; 42:1102(2)(a)(v), (9), (14), (18), & (19); and 42:1167. The Board of Ethics has jurisdiction, constitutionally granted by LSA-Const. art. X, sec. 21 and legislatively defined by LSA-R.S. 42:1101 et seq., to investigate and pursue formal charges against legislators for alleged violations of the Code of Ethics, unless that conduct falls within the narrowly carved exception defined by LSA-Const. art. III, sec. 8, i.e., when a legislator is acting within the legitimate legislative sphere.
In all other instances, the Board of Ethics has jurisdiction, pursuant to LSA-Const. art. X, sec. 21 and LSA-R.S. 42:1101, et seq., to investigate and pursue charges against legislators for alleged violations *545 of the Code of Governmental Ethics. However, where actions within the legitimate legislative sphere are involved, we are constrained to conclude that LSA-Const. art. III, sec. 8 prohibits the Board of Ethics from exercising jurisdiction, by mandating that the legislator may not be questioned "elsewhere," other than in his respective House. Thus, LSA-Const. art. III, sec. 8 carves out a very narrow exception to the jurisdiction granted to the Board of Ethics pursuant to LSA-Const. art. X, sec. 21 and LSA-R.S. 42:1101, et seq., an exception which we must conclude is applicable herein.
However, we reject the Board's argument that our holding will exempt all legislators from the Code of Governmental Ethics when their actions may be within the legislative sphere. On the contrary, our holding herein does not exempt legislators from the duties imposed upon them in the Code; rather, it merely provides that any alleged violation of those duties occurring within the "legitimate legislative sphere" may not be questioned "elsewhere," other than in the legislature. Thus, pursuant to LSA-Const. art. III, sec. 8, where a legislator's actions within the legitimate legislative sphere, such as speech, debate, and voting on matters before the legislature, constitute an alleged violation of the Code of Governmental Ethics, the Board of Ethics is without jurisdiction to question or punish such action. Nonetheless, the legislator is not exempt from questioning and punishment for those actions. Instead, the power to question the legislator in such an instance is within the sole province of the legislature. LSA-Const art. III, § 8.[16]
Considering the foregoing and based upon our conclusion that the Board of Ethics lacks jurisdiction to question the actions of Arnold and Heaton, which actions occurred in the legitimate legislative sphere, we are constrained to conclude that the Board of Ethics erred in denying Arnold and Heaton's exception of jurisdiction ratione materiae. Accordingly, we are likewise required to grant the exception and dismiss the charges instituted by the Board of Ethics against Arnold and Heaton for their actions before the legislature of deliberating, debating, and voting on various bills in which their immediate family members had a financial interest.

CONCLUSION
For the above and foregoing reasons, the November 8, 2007 ruling of the Board of Ethics, denying Arnold and Heaton's exception of jurisdiction ratione materiae, is vacated. Judgment is hereby rendered, maintaining their exception of jurisdiction ratione materiae and dismissing the charges in Ethics Board Docket No. 2006-217 against Arnold and Heaton for their participation in the discussion of House Bills 50 and 69 of the 2006 1st Extraordinary Legislative Session and their discussion of and vote on House Bill 656 of the 2006 Regular Legislative Session.
NOVEMBER 8, 2007 RULING OF THE BOARD OF ETHICS VACATED; RELATORS' EXCEPTION OF JURISDICTION RATIONE MATERIAE MAINTAINED.
GUIDRY, J., concurs in the result.
NOTES
[1] Section 1112(B)(1) of the Code of Governmental Ethics, codified as Louisiana Revised Statute 42:1112(B)(1), provides as follows:

B. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest:
(1) Any member of his immediate family.
A "public servant" is defined as a public employee or an elected official. LSA-R.S. 42:1102(19).
[2] Louisiana Constitution article III, section 8 provides that no member of the legislature "shall be questioned elsewhere for any speech in either house."
[3] This court's opinion in the related appeal is also being handed down this date. Arnold v. Board of Ethics, 2007 CA 1159 (La.App. 1st Cir.5/23/08), 984 So.2d 966 (unpublished).
[4] Moreover, art. III, sec. 9 of the Louisiana State Constitution provides as follows: "Legislative office is a public trust, and every effort to realize personal gain through official conduct is a violation of that trust. The legislature shall enact a code of ethics prohibiting conflict between public duty and private interests of members of the legislature."
[5] By Act No. 23 of the 2008 1st Extraordinary Session, LSA-R.S. 42:1141 was amended to provide that public hearing:; on charges issued by the Board are to be conducted by the Ethics Adjudicatory Board. The amended version of LSA-R.S. 42:1141, which also provides for the creation of the Ethics Adjudicatory Board, does not become effective until August 15, 2008.
[6] Additionally, in Wooley v. State Farm Fire and Casualty Insurance Company, XXXX-XXXX (La.App. 1st Cir.2/10/06), 928 So.2d 618, 622-623, this court stated that nothing in the language of LSA-R.S, 22:620 and 22:621 suggests that the legislature intended the Commissioner of Insurance to be the final, definitive arbiter for the interpretation and reconciliation of the Insurance Code and insurance policy language, noting that "[t]hat role is of course constitutionally assigned to the judiciary."
[7] Some jurisdictional issues, of necessity, would be considered as within the implied power or authority necessary to effectuate the powers expressly granted to the Board, inasmuch as a determination of jurisdiction must be considered and decided before any tribunal can move one further step in the cause. See Rhode Island v. Massachusetts, 37 U.S. 657, 718, 12 Pet. 657, 9 L.Ed. 1233 (1838). Moreover, where a tribunal lacks jurisdiction, it nonetheless has the authority to dismiss the action for lack of jurisdiction. See Shirey v. Campbell, 151 So.2d 557, 564 (La.App. 2nd Cir.1963). Thus, even by dismissing an action, the tribunal essentially has exercised some initial dominion or "jurisdiction."
[8] Specifically, we note that, as set forth above in the facts and procedural history, Arnold and Heaton filed a declaratory judgment suit in the Nineteenth Judicial District Court, seeking a judgment declaring that LSA-Const. art. III, sec. 8 barred the Board from pursuing the charges against them. However, the district court determined that Arnold and Heaton had to first assert their constitutional issues to the Board and, thus, that the suit was premature. Arnold and Heaton then appealed that ruling, a decision which we are also handing down this date. Arnold v. Board of Ethics, 2007 CA 1159 (La.App. 1st Cir.5/23/08), 984 So.2d 966(unpublished).

Arnold and Heaton also filed their exception of jurisdiction ratione materiae in the Board proceedings, but they also filed a motion for stay with the Board, seeking a stay of the proceedings therein pending a final disposition of the appeal in the declaratory judgment suit. The Board denied the stay, and Arnold and Heaton filed a writ application with this court, seeking a review of that ruling. In support of their writ application, they argued that the resolution of whether LSA-Const. art. III, sec. 8 prohibited the Board from pursuing the instant charges against them was solely within the province of the courts.
However, this court denied Arnold and Heaton's writ application. One member of the panel concurred in the denial of the writ, noting that Arnold and Heaton could obtain an adequate remedy by review on expedited supervisory writs following any adverse ruling as to the exception of jurisdiction ratione materiae filed by them in the Board proceedings. In Re: Arnold and Heaton, 2007 CA 2049 (La.App. 1st Cir.10/30/07)(unpublished).
[9] Moreover, article III, section 9 of the Louisiana Constitution provides as follows: "Legislative office is a public trust, and every effort to realize personal gain through official conduct is a violation of that trust. The legislature shall enact a code of ethics prohibiting conflict between public duty and private interests of members of the legislature."
[10] Revised Statute 42:1120 provides that an elected official shall recuse himself from voting on a matter where such a vote would be a violation of LSA-R.S. 42:1112. However, LSA-R.S. 42:1120 further provides that the elected official shall not be required to recuse himself if he prepares and files a statement "describing the matter in question, the nature of the conflict or potential conflict, and the reasons why, despite the conflict, the elected official is able to cast a vote that is fair, objective, and in the public interest." The statement must be filed within three days of the vote with:he chief clerical officer of the body in which the vote is taken and with the appropriate ethics body. LSA-R.S. 42:1120.
[11] In Copsey, this court noted that until 1974, the Louisiana Constitution had contained the phrase "speech or debate," just as does the United States Constitution. However, this court concluded, the change from "speech or debate" to "speech" in the 1974 Louisiana Constitution was "for stylistic reasons only." Copsey, 593 So.2d at 687-688.
[12] United States Constitution article 1, section 6, clause 1 similarly provides that:

The Senators and Representatives ... shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.
[13] In Kilbourn, the plaintiff brought suit for false imprisonment, alleging that the Speaker and several members of the House of Representatives had ordered him arrested for contempt of Congress. The Court held that Congress did not have the power to order the arrest, but further held that the Speech or Debate Clause of the United States Constitution protected the defendants from liability. Specifically, the Court held that the defendants' participation in passing the resolution that ordered the arrest was "speech or debate" within the meaning of the federal speech or debate clause, concluding that the privilege granted therein should be read broadly. Kilbourn, 103 U.S. at 196, 204.
[14] Section 201 of title 18 of the United States Code governs the crimes of bribery of, and the acceptance of bribes by public officials.
[15] Article I, section 5, clause 2 of the United States Constitution provides that "[e]ach House may determine the Rules of its Proceedings, punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member."
[16] See also LSA-Const. art. III, § 7(A) ("Each house ... may punish its members for disorderly conduct or contempt; and may expel a member with concurrence of two-thirds of its elected members.").